LAVECCHIA *v.* MAYOR AND ALDERMEN OF CITY OF VICKSBURG.

(In Banc. Feb. 12, 1945. Suggestion of Error Overruled April 9, 1945.)

[20 So. (2d) 831. No. 35726.]

Brunini & Brunini, of Vicksburg, for appellant.

864

R. M. Kelly and **Vollor & Teller**, all of Vicksburg, for appellees.

Argued orally by **John Brunini,** for appellant, and by **Landman Teller** and **R. M. Kelly,** for appellees.

**Roberds, J.,** delivered the opinion of the court.

This appeal involves the validity of a proceeding increasing the value of the Milner Hotel property in Vicksburg for municipal tax purposes for the year 1941. Mrs. Lavecchia, the owner, listed the property with the city tax assessor at a value of $65,000. The assessor reported such listing to the mayor and aldermen, and recommended an increase in value to $85,500. The mayor and aldermen, by order on their minutes, referred this assessment, as well as all others in the municipality, to what is called a Committee of the Whole for examination, revision and equalization. That committee consists of the mayor and the two aldermen. The committee, acting by two of its members, approved the recommendation of the assessor for the increase in value. The mayor and aldermen ordered that notice be, and it was, given by publication to all taxpayers whose property values had been increased, to appear before the mayor and aldermen at a time specified to protest such increases if they desired so to do. A special notice was also given Mrs. Lavecchia. She, by written protest and in person and by attorney, contested the increase. On this hearing, the mayor and aldermen allowed and approved the recommendation of the assessor and valued the property at $85,500. Mrs. Lavecchia appealed to the circuit court, where the question was tried before a jury upon much evidence on both sides. The jury returned the following verdict: "We, the Jury, find for the City of Vicksburg and fix the assessment at $85,-500.00." From this verdict, and the judgment entered thereon, Mrs. Lavecchia appeals here.

A number of errors are assigned, but we deem it necessary to discuss only three of them.

The trial court granted the City of Vicksburg, defendant in the court below, this instruction: "The Court instructs the Jury for the City of Vicksburg: That if you find your verdict in favor of the City of Vicksburg, the form of your verdict may be: 'We, the Jury, find for the

City of Vicksburg and fix the assessment at $85,500.00.' ''
It will be noted that the verdict of the jury is in the
language of this instruction. Appellant says this instruc-
tion is erroneous and was necessarily prejudicial to her.
In this we think she is correct. In the first place, the
instruction, when given, had inserted into it the amount
at which the jury should value the property if it followed
that form. It indicated to the jury that if it found for the
city, it would name the stated sum, and that a value in any
other amount would not be a verdict for the city, whereas
a finding of any value in excess of $65,000, although less
than $85,500, would have been a verdict for the city.
William Atkinson & Bacot Company v. Board of Super-
visors, 73 Miss. 348, 18 So. 924.

Another defect in the instruction is in the question sub-
mitted to the jury. The charter of the city provides that
all property within the municipality "shall be assessed
and listed for taxation at the fair and full worth and
market value of the same." Section 112 of the Consti-
tution requires that: "Taxation shall be uniform and
equal throughout the state. Property shall be taxed in
proportion to its value . . . '' It is undisputed, and,
in fact, admitted, in this case, that for the year in ques-
tion, at least, property in Vicksburg was assessed for
municipal tax purpose at two-thirds of its value. There-
fore, applying the requirements of the charter and of the
Constitution to the admitted facts of this case, the ques-
tion which should have been submitted to and decided by
the jury was what was two-thirds of the fair, full worth
and market value of the property, such value to be equal
and uniform with that of other like property in Vicksburg.
In other words, it was not the duty of the jury to expressly
find either for the city or the taxpayer. Its province was
to determine the taxable value of the property under the
uniform method of ascertaining such value in Vicksburg.

However, it is contended that the errors in this instruc-
tion were cured by an instruction granted the taxpayer.
The writer is inclined to agree with this view, but, with-

out setting out that instruction and discussing the reasons urged by appellee, it is sufficient that the other members of the Court are of opinion that the errors are not thus cured, and that the granting of the said instruction to the city is reversible error.

It is earnestly urged by appellant that this case should also be reversed and remanded because the verdict of the jury is against the overwhelming weight of the evidence. The Court is divided on that, which means an affirmance on that question standing alone.

Appellant next contends that the entire proceeding herein is illegal and void because it did not follow the requirements of the charter. The charter provides (amendment of January 1928) that if the owner lists his property for taxes at a sum less than the city assessor believes it to be worth, the assessor shall report such listing to the mayor and aldermen "at a time to be prescribed by them, with a statement of what he believes to be a reasonable and just taxable value of the said property. The report of the assessor and collector shall be received and considered by the mayor and aldermen at such time and upon such notice to the property owner as may be fixed by ordinance, and upon the hearing by the mayor and aldermen of any protests or objections made by the property owner, the said mayor and aldermen shall fix and determine the proper value of such property and assessment." The charter further provides that if the property owner names a valuation at a sum less than the mayor and aldermen believe it to be worth, they may of their own motion and without any statement or recommendation from the assessor as to what he believes it to be worth raise the valuation to an amount that in the opinion of the mayor and aldermen is fair, reasonable and just "upon such notice to the owner of the property as may be fixed by an ordinance . . ." The charter further provides that the mayor and aldermen "shall have the power of finally determining the taxable value

of all property in the said city; and shall also have the power and authority to equalize the assessment of all property in said city, and may increase or diminish the value of any such property so that property of the same value shall be assessed for an equal sum.'' It will be noted that in this case the mayor and aldermen first referred the assessments to a Committee of the Whole, which committee made a report and recommendation. It was then for the first time that the mayor and aldermen gave notice to taxpayers, fixing the time and place, to protest. In others words, the assessor had made his recommendation of the increase, and the Committee of the Whole had approved it, and both had been submitted to the mayor and aldermen before notice was directed to be given taxpayers. Appellant says she had the right to have notice that the assessor had recommended an increase in the value of her property before any further action was taken thereon, with the right to appear and contest any further action, either by a committee or by the mayor and aldermen, on such recommendation of the assessor. The procedure adopted here was not in strict accordance with the charter, but a majority of the Court is of opinion that the procedure was a substantial compliance with the charter and the appellant and the other taxpayers were not deprived of any rights; that the opportunity was given, and in the case at bar exercised, to appear before the mayor and aldermen and contest the increase before any final action was taken thereon, and at a time when the question was still open, and the mayor and aldermen had the full right and opportunity to allow or deny the increase, and that this is especially true in view of the above quoted provision to the effect that the mayor and aldermen ''may of its own motion and without any statement or recommendation from the assessor raise the valuation to an amount that in their opinion and belief is fair, reasonable and just,'' with final power and authority to equalize the assessments and increase or

diminish the value of any and all property for taxation purposes.

It is observed, in this connection, that the special notice to appellant informed her of this power of the mayor and aldermen.

While the specific question now under consideration was not raised, and, therefore, not decided, in City of Vicksburg v. Melsheimer, 183 Miss. 517, 184 So. 68, 69, 185 So. 207, or Stewart v. Mayor & Aldermen of Vicksburg, 195 Miss. 189, 13 So. (2d) 40, yet the same method herein adopted for increasing the assessment was followed in both cases, and in the Melsheimer case the Court observed that the work of reviewing and revising the assessment rolls was preliminary and "preparatory to giving the taxpayers notice of a date when they may appear and be formally heard." And further that: "The work at those preliminary meetings has no finality as to the taxpayer,—it is no more than to prepare the rolls into what are, in effect, completed proposals by the board in regard to the assessments, as against which proposals the taxpayer has a right to be heard later and before the proposals can become final. The work of preliminary review and revision may properly be termed a mere matter of administrative detail. It is not contemplated, and certainly it is not essential, that the taxpayer is to be heard or is even to be present at those prolonged examinations. As already mentioned, the taxpayer's time to be present and to be heard is later, after notice has been given him of the day when he will be heard."

Reversed and remanded.