ANTHONY GARCIA *vs.* KARL E. FALKENHOLM *et al.,* Councilmen of the Town of Middletown.
MANUEL S. CORDEIRO *et al. vs.* SAME.
CHARLES E. RYERSON *vs.* SAME.
ROBERT T. SHAW *et al. vs.* SAME.
MARIO PARANZINO *et al. vs.* SAME.
WILLIAM C. MEDERIOS, JR., *et al. vs.* SAME.
ARCHIE L. KAULL *et al. vs.* SAME.
PETER L. PARANZINO *et al. vs.* SAME.
EDMINA VIEIRA *vs.* SAME.

ALFRED V. COREY *et al. vs.* SAME.
JOSEPH A. SYLVIA *et al. vs.* SAME.
JOSEPH SANTOS *et al. vs.* SAME.
JAMES S. HENSHAW *et al. vs.* SAME.
MANLEY DE ASCENTIS *et al. vs.* SAME.
ANTONE D. CORREIRA *et al. vs.* SAME.
MARTIN J. WEST *et al. vs.* SAME.
WILLIAM R. ADAMS *et al. vs.* SAME.

MARCH 18, 1964.

PRESENT: Roberts, Powers and Joslin, JJ.

452

JOSLIN, J. Twenty-six petitions were brought pursuant to G. L. 1956, §44-5-26, by owners of real estate located on Forest avenue and Valley road in the town of Middletown against the respondents in their capacities as members of the town council of that town. The petitioners sought to have the assessments for the construction of lateral sewers on those streets made against their properties pursuant to P. L. 1958, chap. 138, as amended by P. L. 1960, chap. 205, set aside as void on the ground that respondents' predecessors failed to comply with the provisions of sec. 10 of chap. 138 as amended, and on the further ground that the assessments were in violation of the rights guaranteed them by arts. V and XIV of the amendments to the constitution of the United States and by art. I, secs. 2 and 16, and art. IV, sec. 1, of the constitution of this state.

Following a hearing before a justice of the superior court, sitting without a jury, a decision was entered for respondents. Thereafter, petitioners in seventeen cases duly prosecuted their bills of exceptions to this court. The cases were consolidated for trial before the superior court and for hearing before this court. Since only the exceptions to the decision and to one evidentiary ruling have been briefed and

argued, petitioners' other exceptions are deemed to be waived.

It appears that the construction of the lateral sewers in each highway was authorized at a special financial town meeting and that thereafter upon representations as to the costs thereof the town council voted on June 26, 1961 that assessments be made against all the owners of land abutting upon those portions of each of the highways in which sewers had been installed.

The first ground upon which it is claimed that the assessments were in violation of both the statute and petitioners' constitutional rights is that the rate of assessment was not uniform as required by chap. 138, sec. 10, which in pertinent part reads: "Such assessment shall be at a uniform rate for each front footage of land abutting on such street, highway or right of way; * * * and provided, further, that a higher rate per front footage may be charged for a lot of land upon which a dwelling house is located than for an unimproved lot of land."

The record shows the following rates of assessment voted by the town council. Forest avenue: land with dwelling house $7 per frontage foot to a maximum of 75 feet and $5.25 per frontage foot for all frontage in excess of 75 feet; unimproved land $5.25 per frontage foot. Valley road: land with dwelling house $7 per frontage foot to a maximum of 75 feet and $6 per frontage foot for all frontage in excess of 75 feet; unimproved land $6 per frontage foot.

It is clear that however the resolutions were phrased, uniformity in effect was achieved by the fixing of $5.25 and $6 per front footage as the base rates respectively for all land abutting upon Forest avenue and Valley road. Moreover, by assessing a charge of $7 per front foot for not in excess of 75 feet of the frontage of land upon which a dwelling house was located, there was accomplished pursuant to statute a proper apportionment of the costs of the improvements between improved and unimproved property.

454

In fixing the rate differentials the council displayed an awareness that an assessment upon improved land at the higher $7 rate against each front footage of dwelling house lots without regard to whether those lots had frontages of 75 feet or several hundred feet might have made the resolutions palpably arbitrary, unreasonable or discriminatory and therefore unconstitutional. See *Cleveland* v. *Tripp*, 13 R. I. 50.

The trial justice found that the adoption by the town council of a 75-foot maximum for imposition of the higher rate bore a reasonable relationship to conditions existing in the town and was not arbitrary. In the light of that finding which is entitled to great weight and will not be disturbed unless clearly wrong, *Levy* v. *Equitable Fire & Marine Ins. Co.*, 88 R. I. 252, and unless the rate differentials, either between improved and unimproved property or between dwelling house parcels having varying foot frontages, are indefensibly unfair, and there is no such contention, the resolutions authorizing the assessments were constitutional. *Cleveland* v. *Tripp, supra.*

The petitioners further contend that failure to charge the improved rate against the Forest avenue tract of land owned by the town upon which was located a school building violated the statutory requirement of uniformity. Since the statute limits application of the improved rate to a lot of land "upon which a dwelling house is located," it was beyond the council's power to authorize an assessment at the higher rate upon the town as the owner of that tract.

The next ground upon which the assessments are challenged is that they exceeded in the instance of each highway the costs of the construction of the lateral sewers therein.

The evidence is that after representations as to the construction costs of the improvements, the town council voted that assessments be made which as to the Forest avenue

project exceeded those costs by $1,132.15 and as to the Valley road project by an amount stated by petitioners to be approximately $93 but which is not clearly established by the evidence or found by the trial justice.

It further appears that the Forest avenue excess was voted as a contingency fund to guard against an insufficiency in the assessment in the event that the Newport Church of Christ, an abutter on that highway, might successfully claim an exemption. The transcript is barren of any reason or explanation for the Valley road excess if indeed there was one.

While it is undoubtedly well settled, as petitioners contend, that it is "a cardinal principle of taxation that taxes may not be levied beyond the needs of government," *Moore* v. *Langton*, 92 R. I. 141, 151, 167 A.2d 558, 563, and that an assessment for municipal improvements should not exceed the cost thereof, *Cleveland* v. *Tripp, supra,* it is equally well settled that an assessment which exceeds the costs of the benefits conferred is not necessarily void. *McTwiggan* v. *Hunter,* 19 R. I. 265.

In *McTwiggan* the court was concerned with an assessment of a municipal tax against real and personal property claimed to be illegal because of the omission and exemption by the assessors of property which should have been taxed. There the court held that the tax was not vitiated unless the omission was a conscious disregard of the law or was accompanied by "an intention to do a wrong or commit a fraud * * *." The court further said that "Accidental omissions, or omissions arising merely from mistakes of law or fact or errors of judgment, in an honest endeavor on the part of the assessors to perform their duty," were not sufficient to render the assessment void. Here the petitioners charge no fraud or intent to do a wrong in making the assessments, but only that the council intentionally and knowingly overassessed. We see no reason nor has any been sug-

gested for distinguishing why the kind of intention which will void an assessment should be any different where the naked intention was to exempt or omit property as in *McTwiggan* or to overassess as in this case.

That the assessments are not void does not resolve the question of what shall be done with the surpluses which as a part of the total sewer assessments are segregated from other tax receipts and kept in a "deferred sewer payment account." The respondents argue that the principle of *de minimis non curat lex* applies and that the surpluses being unsubstantial should be retained by the town to provide for expense items overlooked or unanticipated at the time the assessments were made. While that contention might have merit if it appeared that the assessments were based on estimated costs of construction, it has no application here where an examination of the town council's resolutions discloses that assessments were voted for improvements already constructed.

To allow the town to retain the excesses would enrich it at the expense of the abutters who have been charged something in excess of the cost of the benefits conferred. In these circumstances it is appropriate that the excesses be held for distribution ratably and according to law to those who have paid the assessments, and that where those assessed have advantaged themselves of the option of paying therefor over a period of twenty years the respective amounts by which the assessments exceed the costs should be reduced or adjusted proportionately.

The validity of the assessments is finally challenged by petitioners on the ground that the cost of the six-inch pipe lines which run from the eight-inch sewer pipe in the street areas to the property lines of the several abutters was assessed against the abutters instead of being charged to the general funds of the town. These connections are referred to as "house connections" and it is apparent that petitioners

consider them to fall within the designation "sewer service connections" as used in the statute.

The petitioners bottom their contention on chap. 138, sec. 1, which defines "sewerage works" as including "sewers and sewer service connections, pumping stations, disposal and filtration plants and other works essential to the proper collection and disposal of the sewage in said town," and on chap. 138, sec. 10, which requires that the cost of the "sewerage works" exclusive of "each lateral sewer" shall be met from the general funds of the town.

While the term "lateral sewer" is nowhere defined in chap. 138, it is provided in sec. 10 thereof that the term includes "all sewers which are not designed to receive the sewerage from any other common sewers" and within the limitations of the foregoing, and "consistently with generally accepted engineering practice" the determination of what constitutes a "lateral sewer" is left to the town council.

In view of the foregoing statutory provisions and in the absence of evidence as to any generally accepted engineering practice to the contrary the trial justice was not in error when he found that the town council properly determined that the expenditures for the installation of the house connections were assessable to the abutting owners as part of the construction costs of the lateral sewers.

We now come to the exception to the ruling of the trial justice admitting over objection testimony as to whether the sewer installations benefited several abutting parcels against which no assessments were made. Although under the majority rule the incompetency of this evidence which was admitted *de bene* cannot be challenged at this stage of the proceedings absent a request for or the making of a subsequent ruling thereon by the superior court, 3 Am. Jur., Appeal & Error, §345, p. 91, we will nonetheless consider the merits of the contention.

The petitioners argue that there was no authority initially to exempt non-benefited property in the light of chap. 138, sec. 10, which requires that the cost of construction be assessed "upon all owners of land abutting" and the opportunity afforded by sec. 13 thereof to abutting owners to obtain relief from an inequitable assessment. Those provisions do not, however, stand alone. They must be read in conjunction with the additional requirement of sec. 10 that assessments made thereunder should "not exceed the benefits to the abutting owners," and they must be interpreted in the light of the long-established principle that it is beyond the constitutional power to levy a special assessment for a local improvement against land which will derive no benefit therefrom. *Norwood* v. *Baker,* 172 U. S. 269; 48 Am. Jur., Special or Local Assessments, §118, p. 667; 14 McQuillin, Municipal Corporations (3d ed.), §38.132, p. 306. Construing the statutory provisions as we have, it is clear that the evidence as to whether the lots of land excluded from the assessment had been benefited by the installation of the lateral sewers was both material and relevant and the exception to the admission thereof is without merit.

The record before us clearly shows that these cases were fully tried in the superior court, excepting only as to a precise fixing of the excesses of the assessments over construction costs and the aliquot shares of the petitioners therein. To remit the cases to that court for new trials excepting only as to those issues would result in unnecessary delay, inconvenience and expense.

In the circumstances, therefore, the parties may appear before this court on April 1, 1964 to show cause if any they have why the cases should not be remitted to the superior court with direction to determine the amounts as to each highway by which the aggregate of the assessments made against the owners of land abutting thereon exceeded the costs of the installation of the lateral sewers therein, and

subsequent to such determination to enter judgment in each case according to law.

*Moore, Virgadamo, Boyle & Lynch, Joseph R. Fogarty,* for petitioners.

*Corcoran, Peckham & Hayes, Edward J. Corcoran, William W. Corcoran,* for respondents.