## In re Property of One Church Street City of Burlington

[565 A.2d 1349]

No. 87-480

Present: **Allen, C.J., Peck, J., and Costello, D.J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed August 4, 1989

*Paul, Frank & Collins, Inc.*, Burlington, for Plaintiff-Appellant.

*John L. Franco, Jr.*, Assistant City Attorney, Burlington, for Defendant-Appellee.

*Jeffrey L. Amestoy*, Attorney General, and *Mary L. Bachman*, Assistant Attorney General, Montpelier, for Intervenor-Appellee.

**Allen, C.J.** Taxpayer appeals the entry of its nonresidential property in the grand list at 120 percent of fair market value, pursuant to statutory authorization. Taxpayer is a partnership which owns a six-story brick building located at 1–7 Church Street in Burlington. The building formerly housed the Masonic Temple and was renovated for commercial uses in 1985. In 1986 the Legislature amended the Burlington City Charter to state as follows, in relevant part:

> Except for the property of utilities subject to the provisions of 30 V.S.A. Chapter 3, all personal and real property set out in the grand list which is not used as

residential property, farmland, and vacant land zoned 'recreation, conservation and open space (RCO)' shall be classified as nonresidential property and shall be assessed at 120% of fair market value; ....

1985, No. M-21 (Adj. Sess.), § 1(3). Burlington implemented the new authority for the tax year which began July 1, 1986, and taxpayer's property was appraised at $2,510,900 and listed at $3,013,100. Taxpayer did not contest the fairness of the initial appraisal of taxpayer's property, but contended that the assessment at 120% of fair market value was invalid under the Common Benefit (ch. 1, art. 7) and Proportional Contribution (ch. 1, art. 9) Clauses of the Vermont Constitution. Taxpayer appealed the listing to the superior court and there moved for summary judgment on the constitutional grounds asserted. The trial court denied the motion and then reported the following two questions to this Court pursuant to V.R.A.P. 5(a):

1. Does the listing of nonresidential property in the City of Burlington at 120% of fair market value pursuant to amended Section 81 of the Charter of the City of Burlington violate the Common Benefit Clause contained in Article 7 of Chapter I of the Vermont Constitution?

2. Does the listing of nonresidential property in the City of Burlington at 120% of fair market value pursuant to amended Section 81 of the Charter of the City of Burlington violate the Proportional Contribution Clause contained in Article 9 of Chapter I of the Vermont Constitution?

I.

Taxpayer relies first on the Common Benefit Clause of the Vermont Constitution, ch. I, art. 7.[1] But this Court has long held that the Common Benefit Clause does not prohibit taxes that distinguish among classes of taxpayers. *State v. Harrington*, 68 Vt. 622, 629, 35 A. 515, 517 (1896) (Legislature may

---

[1] Chapter I, Art. 7 states, in relevant part:

That government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any single man, family, or set of men, who are a part only of that community;....

impose a license tax upon one occupation and not another, so long as there is no discrimination among those engaged in the occupation taxed). Taxpayer does not dispute that the Common Benefit Clause, like the Proportional Contribution Clause, prohibits only arbitrary and irrational classifications. See *State v. Auclair*, 110 Vt. 147, 161, 4 A.2d 107, 113 (1939). But taxpayer asserts that since *State v. Ludlow Supermarkets, Inc.*, 141 Vt. 261, 448 A.2d 791 (1982), this Court has imposed a much stricter standard for state action: that a "preferential standard" will be invalidated unless a "compelling public need is demonstrated."

Taxpayer is correct in identifying the "preferential standard" as the evil which the Common Benefit Clause addresses. While the focus of the federal Equal Protection Clause and Vermont's Proportional Contribution Clause is the individual and the social calculus of what is required to treat each individual in the society equally,[2] the emphasis in the Common Benefit Clause is the obverse—what is required to protect the polity from the granting of privilege to the few. Though it may be an oversimplification, the goal of the Proportional Contribution Clause is protection of the individual from unfair government action, while the aim of the Common Benefit Clause is to protect the state from favoritism to individuals and to remind citizens of the sense of compact that lies at the heart of constitutional government. *Ludlow Supermarkets, Inc.* states that where preferential legislation is at issue, "[t]he purpose of the preferential legislation must be to further a goal independent of the preference awarded, sufficient to withstand constitutional scrutiny." 141 Vt. at 269, 448 A.2d at 795. The express purpose of the so-called Sunday closing law in that case was "to promote the economic health of small business enterprises." 13 V.S.A. § 3352 (repealed 1983, No. 80 (effective Apr. 29, 1983)); *Ludlow Supermarkets, Inc.*, 141 Vt. at 267, 448 A.2d at 794. The Legislature expressly targeted a class of beneficiaries of the legislation—small businesses—rather than crafting legislation "instituted for the

---

[2] "The equal protection clause ... protects the individual from state action which selects him out for discriminatory treatment by subjecting him to taxes not imposed on others of the same class." *Township of Hillsborough v. Cromwell*, 326 U.S. 620, 623 (1946).

common benefit, protection, and security of the people, nation or community." There could be no claim in support of the Sunday closing law that the large businesses compelled to close on Sundays were included in the general class of its beneficiaries or that the detriment they incurred was only incidental. As the Court stated, the whole recent history of legislation in this area is a demonstration that the core purpose of these laws, confirmed by legislative language, is the special protection of the economic health of small, locally owned, retail stores. 141 Vt. at 270, 448 A.2d at 796.

█ The amended Burlington Charter stands on a different footing. Though it creates classifications of taxpayers, its goal is to raise total City revenues and benefit the City's inhabitants as a whole. As this Court said in *Ludlow Supermarkets, Inc.*:

> Almost all regulatory legislation, particularly when the concern is economic, tends to be uneven in its impact. Such inequalities are not fatal with respect to constitutional standards if the underlying policy supporting the regulation is a compelling one, and the unbalanced impact is, as a practical matter, a necessary consequence of the most reasonable way of implementing that policy.

141 Vt. at 265, 448 A.2d at 793 (citing *Auclair*, 110 Vt. at 160, 4 A.2d at 113). The underlying purposes for the classification challenged in this case are clear on the face of the Act and were presented to the Legislature during its consideration. About the impact of the proposed amendment on City revenues, the City Attorney testified before the Senate Finance Committee as follows:

> It is not a revenue neutral provision. It is a revenue raising issue. It was developed upon recommendation of a business person's task force within the city and was developed with the notion to [sic] softening the blow of the loss of federal revenue sharing that the city could expect.

Testimony of Joseph E. McNeil, April 24, 1986, transcript at 4. Taxpayer points to no legislative history indicating that the bill's purpose was to grant a preferential benefit to any class of persons in Burlington, and points to no evidence that the charter amendment does so in fact. It surely will benefit some

taxpayers more than others, but "[s]o long as the public purpose is paramount and the enactment reasonably related to that purpose, the statute is not made invalid thereby." *Vermont Woolen Corp. v. Wackerman*, 122 Vt. 219, 226, 167 A.2d 533, 538 (1961).

## II.

■ Taxpayer argues next that Burlington's tax scheme violates the Proportional Contribution Clause of the Vermont Constitution, ch. I, art. 9,[3] because that Clause requires that all property be assessed at a uniform rate, without the creation of classes of property within which the mandate of equality would be enforced.[4] But this Court has never construed the Clause to forbid reasonable classifications of property for tax purposes. "The constitutional requirement of proportional contributions for the support of the government was not intended to restrict the State to methods of taxation that operate equally upon all its inhabitants." *Clark v. City of Burlington*, 101 Vt. 391, 405, 143 A. 677, 682–83 (1928). "And, as far as classifications are concerned, our proportional contribution clause is the practical equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution." *In re Estate of Eddy*, 135 Vt. 468, 472, 380 A.2d 530, 534 (1977). See also *State v. Auclair*, 110 Vt. at 161, 4 A.2d at 114.

---

[3] Chapter I, Art. 9 states:

> That every member of society hath a right to be protected in the enjoyment of life, liberty, and property, and therefore is bound to contribute his proportion towards the expence [sic] of that protection, and yield his personal service, when necessary, or an equivalent thereto, ... and previous to any law being made to raise a tax, the purpose for which it is to be raised ought to appear evident to the Legislature to be of more service to community than the money would be if not collected.

[4] Appellant argued in the trial court that in addition to denying nonresidential taxpayers uniform treatment within Burlington, the Legislature's decision to grant only Burlington and Winooski the power to impose a differential tax rate discriminated against those taxpayers in comparison with nonresidential taxpayers in other municipalities. That argument has not been asserted on appeal.

■ Taxpayer contends that recent decisions of this Court have "revised the theory" of the Proportional Contribution Clause of the Vermont Constitution, citing *Bookstaver v. Town of Westminster*, 131 Vt. 133, 142–43, 300 A.2d 891, 897 (1973):

> The law requires that the methods of taxation must operate equally upon all of the inhabitants. See Chapter I, Article 9, Vermont Constitution; Fourteenth Amendment to the United States Constitution; *Clark v. Burlington*, 101 Vt. 391, 143 A. 677 (1928); *In re Hickok's Est.*, 78 Vt. 259, 62 [A.] 724 (1906). This law applies equally to the evaluation of property for tax purposes.

But neither *Bookstaver* nor four subsequent cases relied on by taxpayer[5] alter the theory of the Proportional Contribution Clause. Our precedents establish two fundamental requirements for the valid imposition of taxes in Vermont: first, that any legislative classification of taxpayers bear a reasonable relation to the purpose for which it is established; and second, that the classification scheme be fairly and equitably applied among like classes of taxpayers.

The meaning of the first requirement is spelled out in *Andrews v. Lathrop*, 132 Vt. 256, 259, 315 A.2d 860, 862 (1974), where we stated:

> What is required is that the discriminatory classification not be capricious or arbitrary, but rest on some reasonable consideration of legislative policy. Judicial inquiry, therefore, is not directed toward a comparison of legislative purposes, but rather toward the nexus between a classification and such purposes as it may serve.
>
> ... Thus, if any reasonable policy or purpose for the legislative classification may be conceived of, the enactment will be upheld.

(Citation omitted.) In *Andrews*, we upheld the so-called Land Gains Tax on speculative property sales, noting that deterrence of land speculation was sufficient legislative motive for constitutional purposes. *Id.* at 261, 315 A.2d at 863. We added:

---

[5] The additional cases are *Town of Barnet v. Palazzi Corp.*, 135 Vt. 298, 376 A.2d 24 (1977); *Brown v. Town of Windsor*, 139 Vt. 129, 422 A.2d 1268 (1980); *Heindel v. Town of Grafton*, 140 Vt. 147, 435 A.2d 695 (1981); and *Kruse v. Town of Westford*, 145 Vt. 368, 488 A.2d 770 (1985).

It is not the function of this Court to pass upon the validity of this concern or the wisdom of the means the legislature has chosen to deal with it, but merely to determine whether the legislature may have acted in response to such a concern and whether in doing so it acted within its constitutional bounds.

*Id.* at 262, 315 A.2d at 863.

In the present case the classifications established by Burlington's tax scheme distinguish nonresidential and residential taxpayers, with the former paying a higher rate of tax than the latter. Taxpayer has not presented this Court with any reason why that classification is not reasonably related to the valid legislative purpose of raising overall City revenues, but argues in effect that *any* tax plan that does not treat all taxpayers within the municipality as comprising a single classification is void. That federal equal protection principles require no such straitjacket was reaffirmed by the United States Supreme Court recently in *Allegheny Pittsburgh Coal Co. v. County Commission*, 488 U.S. 336, 109 S. Ct. 633 (1989), holding on the facts of that case that disparities in property tax assessment rates of from eight to thirty-five times those applied to comparable neighboring properties *within the same class* violated the equal protection guarantees of the Fourteenth Amendment. The Court, however, reemphasized the power of states to establish different assessment rates for different classes of property. It said that "[a] State may divide different kinds of property into classes and assign to each class a different tax burden so long as those divisions and burdens are reasonable." *Id.* at 344, 109 S. Ct. at 638. The Court also reaffirmed that "[t]he Equal Protection Clause 'applies only to taxation which in fact bears unequally on persons or property of the same class.'" *Id.* at 343, 109 S. Ct. at 637 (citing *Charleston Fed. Savings & Loan Ass'n v. Alderson*, 324 U.S. 182, 190 (1945)) (collecting cases). We may say the same here.

The second mandate of both our tax statutes and the Vermont Constitution is that a classification once established be applied equitably to all within the class. *Bookstaver* does not hold the contrary or command that all classes of property within a town be taxed at the same rate. In that case the town had not placed different classes of property in different tax

rate categories, and our reversal of the trial court order was based on our determination that within the town as a whole, which remained as one class of taxpayers, there was a "decided lack of uniformity" between the taxpayer's property and comparable properties. 131 Vt. at 143, 300 A.2d at 897. *Bookstaver* simply reminds us that once fair classifications have been established, taxpayers *within a given classification* must be treated alike.

Taxpayer seeks to distinguish Vermont's Proportional Contribution Clause and the Equal Protection Clause of the Fourteenth Amendment, under whose "rational basis" test taxpayer concedes the Burlington Charter amendment might be upheld. But whatever distinction may or not exist between the Vermont and federal equal protection guarantees in other contexts, *Bookstaver* did not rest on any such difference.[6]

Other state constitutions, though varied in specific constitutional provisions, generally have supported enactments establishing classifications among taxpayers in the same taxing jurisdiction. *Commonwealth v. Life Assurance Co. of Pennsylvania*, 419 Pa. 370, 389, 214 A.2d 209, 220 (1965) (distinctive treatment accorded domestic life and nonlife insurers by tax of gross premiums did not violate uniformity clauses of federal or state constitutions), *appeal dismissed*, 384 U.S. 268 (1966); *Little Earth of United Tribes, Inc. v. County of Hennepin*, 384 N.W.2d 435, 441 (Minn. 1986) (distinction between private, government subsidized housing and wholly public property was reasonably related to legitimate state purpose); *Roosevelt Properties Co. v. Kinney*, 12 Ohio St. 3d 7, 13–14, 465 N.E.2d 421, 427 (1984) (rule applying tax reduction only to homeowners whose property includes three or fewer additional dwelling units is valid); *Andover Savings Bank v. Commissioner of Revenue*, 387 Mass. 229, 244, 439 N.E.2d 282, 293 (1982) (equal protection not violated because mutual banks

---

[6] *Bookstaver* was decided with reference to 32 V.S.A. § 4467, which requires that "[t]he state board or court shall take into account the requirements of law as to valuation, and the provisions of Chapter I, Article 9 of the Constitution of Vermont and the 14th Amendment to the Constitution of the United States." Neither state nor federal constitutional provision is given precedence in the statute, and taxpayer offers no rationale for suggesting that any of the cases it relies on were decided exclusively under the state charter.

are taxed differently from state-chartered commercial banks); *Capitol Cablevision Corp. v. Hardesty*, 168 W. Va. 631, 643, 285 S.E.2d 412, 419 (1981) (distinguishing cable companies from television broadcasters for tax purposes valid under state constitutional requirement of equal and uniform taxation); *Knight v. Department of Revenue*, 293 Or. 267, 271, 646 P.2d 1343, 1345 (1982) (constitutional provision requiring uniformity of taxation not violated by classification distinguishing land in exclusive farm use zones and other land).[7]

Among state constitutions, perhaps Rhode Island's comes closest to Vermont's Proportional Contribution Clause,[8] and that state has allowed reasonable rate differentials for different classes of property within a municipal tax scheme. *Garcia v. Falkenholm*, 97 R.I. 450, 454, 198 A.2d 660, 662 (1964) (distinction between tax on improved and unimproved land is valid). The present case stands on the same footing with the majority of state cases raising the issue of differential taxation of reasonably distinguished classes of taxpayers under state constitutions. In Burlington the City urged, and the Legislature adopted, a taxing scheme designed to raise total revenues and which would establish what the City (and ultimately the Legislature) deemed to be a fair division of responsibility between residential and nonresidential property owners. It is not for this Court to say that such purposes were improper, any more than we should have passed judgment on the legislative design to discourage speculative land sales in *Andrews v. Lathrop* or the subtleties of differential impact that are inherent in nearly every tax enactment.

---

[7] The Indiana and Mississippi constitutions have language significantly different from Vermont's, mandating a high degree of uniformity in classification. Ind. Const. art. 10, § 1; Miss. Const. art. 4, § 112. See *Johnson v. Board of Park Commissioners*, 202 Ind. 282, 290, 174 N.E. 91, 94 (1930) (All property taxed by one taxing authority must use same valuation ratio and same percentage rate.); *Lavecchia v. Mayor & Aldermen of Vicksburg*, 197 Miss. 860, 869, 20 So. 2d 831, 833 (1945) (State constitution requires that valuation of taxpayer's property be equal and uniform with that of other property in same taxing jurisdiction.).

[8] Article I, § 2 of the Rhode Island Constitution states in relevant part:

All free governments are instituted for the protection, safety, and happiness of the people. All laws, therefore, should be made for the good of the whole; and the burdens of the state ought to be fairly distributed among its citizens.

■ Taxpayer's burden on summary judgment under Ch. I, Art. 9 of our Constitution was to establish that the tax scheme embodied in the Burlington Charter Amendment could not be reconciled with any conceivable state of facts that might lend it rationality. As the U.S. Supreme Court has stated:

> The state is not called upon to explain the reasons for taxing the members of the one class more heavily than it does the members of [another]. The burden is on the appellant who would strike the statute down, and not on the state which invokes the presumption of validity.

*Concordia Fire Ins. Co. v. Illinois*, 292 U.S. 535, 558 (1934) (Cardozo, J., dissenting in part). Taxpayer has not carried this burden, and the trial court's decision denying summary judgment must stand.

*Questions answered in the negative, and matter remanded to the trial court for further proceedings.*