# Burlington Electric Department v. Vermont Department of Taxes

[576 A.2d 450]

No. 89-235

Present: Allen, C.J., Peck, Gibson and Morse, JJ.

Opinion Filed May 11, 1990

*King & King*, Waitsfield, for Plaintiff-Appellant.

*Jeffrey L. Amestoy*, Attorney General, and *Jacqueline A. Hughes*, Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Allen, C. J.** The Burlington Electric Department (BED) appeals from a decision of the Washington Superior Court affirming the Commissioner of Taxes' assessment of a sales and use tax upon the purchase of woodchips used to produce electricity at the Joseph C. McNeil Generating Station in which BED had a 50% ownership interest. We affirm.

The Station is a wood-fired steam electric generating plant. Woodchips are blown by air into a firebox where they are burned to release heat. The hot gases from the fire heat the boiler firebox, converting pressurized water into steam. The steam turns a turbine generator to produce electric current.

The Department of Taxes levied a sales and use tax assessment against BED in the amount of $191,781.50 for woodchips purchased between September, 1983 and February, 1986. The parties stipulated to the facts of the case, and the Commissioner affirmed the Department's assessment. BED appealed to the superior court, which affirmed the Commissioner's decision, ruling that woodchips were fuel and therefore subject to taxation.

32 V.S.A. § 9771 imposes a 4% tax upon receipts from the sale of tangible personal property sold at retail in Vermont. "Sold at retail" is defined as "the sale of tangible personal property to any person for any purpose, other than for resale." 32 V.S.A. § 9701(5). Therefore, all sales of tangible personal property in Vermont are subject to sales tax unless they do not qualify as a retail sale or are otherwise made exempt.

This dispute focuses on whether the woodchips are taxable as fuel or exempt as a raw material within the meaning of 32 V.S.A. § 9741(14). Section 9741 provides in pertinent part:

> Receipts from the following shall be exempt from the tax on retail sales imposed under section 9771 of this title and the use tax imposed under section 9773 of this title.
>
> . . . .

(14) Tangible personal property which becomes an ingredient or component part of, or is consumed or destroyed or loses its identity in the manufacture of tangible personal property for sale but does not include fuel and electricity; . . . .

The first two clauses of the § 9741(14) "manufacturing" exemption apply to two classes of tangible personal property: "raw materials" and so-called "consumables." The parties agree that woodchips constitute tangible personal property as defined by 32 V.S.A. § 9701(7) and that electricity is manufactured tangible personal property within the meaning of § 9741(14). The parties disagree, however, over the applicability of the language which excludes fuel and electricity from the manufacturing exemption and thereby subjects them to the sales and use tax.

BED raises two arguments on appeal. First, BED contends that the fuel and electricity exclusion modifies only the consumables clause. Since woodchips constitute raw materials, the argument continues, the fuel and electricity exemption does not apply, thereby rendering woodchips exempt like all other raw materials. Second, BED asserts that the imposition of sales and use tax on the purchases of woodchips results in discriminatory, double taxation in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution and the proportional contribution clause of Chapter I, Article 9 of the Vermont Constitution. We disagree with BED on both points.

I.

The resolution of whether woodchips are taxable fuel or exempt as raw materials turns on the construction of 32 V.S.A. § 9741(14). When construing a statute, our primary objective is to effectuate the intent of the Legislature. *Spears v. Town of Enosburg*, 153 Vt. 259, 261, 571 A.2d 604, 605 (1989). We begin with the presumption that the Legislature intended the statutory language to carry its plain, ordinary meaning. *State v. Harty*, 147 Vt. 400, 402, 518 A.2d 30, 31 (1986). Where the meaning of a statute is plain on its face, this Court will en-

force the statute according to its terms for "there is no need for construction; the legislative intent is to be ascertained from the act itself." *Hill v. Conway*, 143 Vt. 91, 93, 463 A.2d 232, 233 (1983).

■■ The plain meaning of § 9741(14) is that fuel used by a manufacturer is not exempt from sales and use taxation. BED contends that the fuel and electricity clause modifies only the consumables clause. This interpretation, however, flies in the face of the statutory language. The ingredients clause ends with the preposition "of" and awaits the union with its object. Only the phrase "tangible personal property for sale," which follows the consumables clause, can serve as the object of this preposition. Therefore, the phrase "tangible personal property for sale" must include the ingredients clause as well as the consumables clause. Further, the fuel and electricity exclusion does not directly follow the consumables clause. Rather, the phrase "tangible personal property for sale" separates the consumables clause from the fuel and electricity exclusion. Therefore, it cannot be maintained that the fuel and electricity exclusion applies only to the consumables clause. Where the Legislature "meant what [it] said and said what [it] meant," we must be true to the statute's intent. See Dr. Seuss, *Horton Hatches the Egg* passim (1940). We think it is apparent that the Legislature intended the fuel and electricity exclusion to apply to both the ingredients and the consumables clauses. Therefore, we need not decide whether woodchips serve as a raw material or consumable in the production of electricity.

Our interpretation of § 9741(14) is consistent with the construction given a substantially similar statute by the Supreme Judicial Court of Maine. In *Androscoggin Foundry Co. v. Johnson*, 147 Me. 452, 88 A.2d 158 (1952), the taxpayer burned coke in the manufacture of cast iron. The burning of coke primarily served to melt iron; however, the manufacturing process also incorporated some of the coke's carbon into the cast iron, thereby rendering it softer and more machineable. The court reasoned that coke was a fuel because the taxpayer burned it to produce heat or power. *Id.* at 456, 88 A.2d at 160. The court explained that the fact that a portion of the coke burned as fuel

became an ingredient in the final product did not deprive the coke of its character as a fuel and affirmed the levy of the sales tax. *Id.* at 456, 88 A.2d at 160–61; see also *Portland Gas Light Co. v. Johnson*, 244 A.2d 817, 819–20 (Me. 1968) (in the manufacture of carburetted gas, the portion of coke burned for fuel was taxable).

■ ■ "[A]bsent compelling indication of error, the interpretation of a statute by the administrative body responsible for its execution will be sustained on appeal." *In re R. S. Audley, Inc.*, 151 Vt. 513, 517, 562 A.2d 1046, 1049 (1989). The Commissioner found in this case that woodchips always function as a fuel source. The Commissioner defined "fuel" as "a material used to produce heat or power by burning"(quoting Webster's Seventh New Collegiate Dictionary), and as "something consumed to produce energy, especially: a material such as wood, coal, gas or oil burned to produce heat" (quoting The American Heritage Dictionary, 2d College Edition (1982)). The Legislature has clearly made fuel taxable without limitation regardless of whether the fuel source could also be characterized as a raw material or consumable. The Commissioner did not err in his construction of the statute, and the superior court correctly affirmed the decision.

## II.

BED argues that the interpretation we announce today violates both the Federal and Vermont Constitutions. First, BED asserts that taxing woodchips merely because they are burned unfairly discriminates against manufacturers who burn their raw materials. Second, BED claims that the tax amounts to impermissible double taxation because, in addition to the tax on woodchips, it must also pay a tax on its own use of the electricity it generates at the station.

■ ■ The proportional contribution clause of the Vermont Constitution, Chapter I, Article 9, and the equal protection clause of the United States Constitution impose the same limits on the State's powers of taxation. *In re One Church Street*, 152 Vt. 260, 265, 565 A.2d 1349, 1352 (1989). Two fundamental re-

quirements exist for the valid imposition of taxes in Vermont: "first, that any legislative classification of taxpayers bear a reasonable relation to the purpose for which it is established; and second, that the classification scheme be fairly and equitably applied among like classes of taxpayers." *Id.* at 266, 565 A.2d at 1352.

The sales and use tax focuses on retail sales and in so doing imposes a tax on the fuel and electricity purchased or used by manufacturers. In this sense, manufacturers represent the ultimate users of fuel and electricity. The Vermont and Federal Constitutions impose no iron rule of equality, for reasonable schemes of taxation must have flexibility and variety. *Andrews v. Lathrop*, 132 Vt. 256, 259, 315 A.2d 860, 862 (1974). As a result, some discriminatory impact is virtually inevitable. This Court does not compare legislative purposes, but rather looks for a reasonable relationship between the classification and its purposes. *Id.* We cannot say that excluding fuel and electricity purchases from the § 9741(14) manufacturers' exemption is unreasonable.

Neither does the statute represent impermissible double taxation. The Commissioner concluded that the two taxes were imposed on two separate transactions: (1) a tax on the purchase of tangible personal property, woodchips; and (2) a tax on the use of tangible personal property, electricity. There is no compelling indication of error on that score.

Even if BED were subject to double taxation, such a result is not per se unconstitutional where "each imposition of a tax [is] firmly grounded in legislative intent." *Id.* at 264, 315 A.2d at 865. As we have previously discussed, the plain language of § 9741(14) clearly reflects the Legislature's intention to tax fuel purchases. Equally clear is the Legislature's intention to tax a manufacturer's use of tangible personal property, such as electricity. See 32 V.S.A. § 9773(2).

*Affirmed.*