BATES *vs.* KIMBALL, Administrator of BARBER.

Kimball, having taken out letters of administration on the estate of Barber, represented the estate insolvent; on which Commissioners were appointed by the Court of Probate, to receive, examine and adjust the claims of the several creditors to said estate. Bates exhibited to said Commissioners a claim against said estate, which they allowed and found due thereon from said estate the sum of $596 20. And the Commissioners, within the time limited by the Court of Probate, returned to said Court a list of the claims by them allowed against said estate—which was by said Court approved and ordered to be recorded; from which Kimball entered no appeal within the time allowed by law; but subsequently, by petition to the Legislature, obtained a special act allowing said Kimball an appeal from said report of the Commissioners, which he entered in the Probate Court agreeably to the provisions of said act.

Held, that a claim allowed by the Commissioners against an estate represented insolvent, is in the nature of a judgment debt; and although Kimball might in this case have vacated the judgment by entering an appeal within the time limited by law, yet as he neglected to do so, it became to all intents, a final judgment, as clearly so as though no appeal therefrom had been allowed by law, and could not be set aside by act of the Legislature. That in passing said act the Legislature exercised a power properly belonging to the Judciary department, which by the Constitution they are expressly prohibited from exercising.

That said act is in the nature of a sentence or decree, rather than a law, being wholly retrospective in its operation, and depriving a party of a vested right—is a violation of the Constitution established by the people as the supreme law of the State, and therefore void.

THIS was an action of debt, originally commenced in the Coun- *Bennington,* ty Court to recover the sum of $596 20, in which the plaintiff de- *February,* *1824.* clared, That heretofore, to wit, on the 1st Wednesday of December, A. D. 1821, Solomon Wright, Obadiah Dunham and Lodowick Stanton, all of Pownal aforesaid, were, by the decree and sentence of the Hon. Court of Probate for the Probate District of Bennington, in the County of Bennington aforesaid, holden at Bennington in said County, appointed Commissioners to receive, examine,

*Bennington,*
February,
1824.

Bates
*vs.*
Kimball.

adjust and allow all the claims of the several creditors to the estate of said Samuel Barber deceased as aforesaid, pursuant to the statute in such case provided. And whereas on the 31st day of Dec. A. D. 1821, at Pownal aforesaid, the said Solomon Wright, Obadiah Dunham and Lodowick Stanton, in obedience to said commission, having given previous notice agreeably to the statute in such case made and provided, and having been sworn according to law, were sitting to receive, examine, adjust, determine and allow the claims of the several creditors to said estate of said Samuel Barber deceased aforesaid, and the said Willard Bates, on the day and year aforesaid, at Pownal aforesaid, appeared before said Commissioners and presented his claim against the estate of the said Samuel Barber deceased aforesaid, for their examination, adjudication and allowance ; and the said Commissioners then and there decided, adjudged and considered, that there was due to the said Willard Bates from the estate of the said Samuel Barber deceased, on the claim presented aforesaid, the sum of five hundred and ninety-six dollars and twenty cents, and the said decision and consideration of the Commissioners aforesaid was, on the 1st Wednesday of March, A. D. 1822, reported to the Court of Probate, and returned into the Registry of said Court of Probate, and by the order, sentence and decree of the said Court of Probate, the said decision and determination of the Commissioners reported and returned as aforesaid, was, on the said 1st Wednesday of March, A. D. 1822, ordered to be accepted and allowed, and ordered to be recorded, as by the record of said order and sentence of the said Court of Probate, ready in Court to be produced, will more fully appear—of which the said Isaac Kimball, administrator aforesaid, had notice—which said decision and determination of said Commissioners, and order, sentence and decree of said Court of Probate, still remains in full force and effect in no wise satisfied, set aside, annulled, or otherwise vacated ; and that said Willard Bates hath not obtained any satisfaction of or upon the said decision and determination of the said Commissioners and decree and sentence of said Court of Probate for the said sum of $596 20 so adjudged, decreed and ordered by the Commissioners aforesaid and said Court of Probate as aforesaid, whereby an action hath accrued to the said Willard Bates, to have and recover of the said Isaac Kimball in his capacity of adminis-

trator aforesaid, the said sum of $596 20 above mentioned, out of the estate of said Samuel Barber deceased aforesaid, in the hands of Isaac Kimball, administrator as aforesaid. Yet the said Isaac Kimball, administrator as aforesaid, although often requested so to do, hath not as yet paid said sum of $596 20 allowed and awarded, or any part thereof to the said Willard Bates, but he so to do, hath hitherto wholly refused and still doth refuse: To the damage of the plaintiff the sum of, &c.

To which the defendant plead in the Court below *nul tiel· record.* On which judgment was rendered for the plaintiff; from which judgment the defendant entered an appeal to the present term of this Court. And the acuse having been duly entered in this Court, the defendant filed the following plea in bar:

And now at this term of the Hon. Supreme Court, that is to say, at the first term after the appeal of this cause from the County Court for the County of Bennington, unto which term the plea aforesaid was appealed, comes the said Isaac Kimball, administrator as aforesaid, by Blackmer and Hall, his attorneys, and says, that the said Willard Bates ought not further to have or maintain his aforesaid action thereof against him, because he says, that after the appeal of this cause from the Hon. County Court, holden at Manchester, within and for the County of Bennington, on the first Monday of June, A. D. 1823, and before the entry thereof in this Court, to wit, on the third day of November, 1823, the General Assembly of the State of Vermont passed a certain act, entitled, " an act for the relief of Isaac Kimball, administrator on the estate of Samuel Barber deceased," of the tenor following, that is to say,

" It is hereby enacted by the General Assembly of the State of Vermont, that Isaac Kimball, administrator on the estate of Samuel Barber late of Pownal deceased, is hereby authorized and empowered, at any time previous to the first day of January next, to enter an appeal from the decision of the Commissioners on said estate allowing a claim of five hundred and ninety-six dollars and twenty cents to Willard Bates of said Pownal, to the next term of the Supreme Court to be holden within and for the County of Bennington, and the proceedings both before the Court of Probate and the Supreme Court, shall be in all respects the same as though the said Isaac Kimball had entered his appeal within the time allowed

Bennington,
February,
1824.

Bates
vs.
Kimball.

by law." As by the record of said act of the General Assembly remaining in the office of the Secretary of State among the records of said Assembly will appear. And after the passing of said act, and previous to the first day of January therein named, to wit, on the 17th day of December, A. D. 1823, at a Probate Court holden at the Probate office in Bennington, within and for the District of Bennington, the said Isaac Kimball, administrator as aforesaid, signified his objections to the said claim of five hundred and ninety-six dollars and twenty cents in the said act mentioned, in writing, to the Probate Court aforesaid, and filed the same in the Probate office of said Court, and also lodged in said Probate office, a copy of said act, duly certified under the hand and seal of Norman Williams, Secretary of State, and the said Probate Court then and there ordered and directed that notice of the same be given to the said Willard Bates, by serving him with a copy of all the said proceedings before said Probate Court at least twelve days before the present term of this Honorable Court as by the application of said Isaac Kimball, now on file in the office of said Probate Court, with the order of said Probate Court thereon, will more fully appear. And the defendant avers, that notice was given to the said Willard Bates agreeably to the order of said Probate Court, and that the said claim of five hundred and ninety-six dollars and twenty cents, recited in the said act of the General Assembly of the State of Vermont, is the same claim and allowance of Commissioners described and demanded in the plaintiff's declaration, and no other. All which he the said defendant is ready to verify : Wherefore he prays judgment if the said Willard ought further to have or maintain his aforesaid action thereof against him.

To which plea there was a general demurrer and joinder.

*Merril* and *D. Robinson, Jr.* for the plaintiff.

*Hall* and *Blackmer* for the defendant.

AIKENS J. delivered the opinion of the Court.

The question raised by the pleadings in this case, is upon the validity of the act of the Legislature, passed November 1, 1823, set forth in the defendant's plea in bar.

All questions arising under the constitution of this, or of the

United States, and especially such as affect the jurisdiction of the <span style="font-style:italic">Bennington, February, 1824.</span> co-ordinate departments of the Government, are questions of importance, demanding great caution in their investigation, and correctness and firmness in their decision. <span style="font-style:italic">Bates vs. Kimball.</span>

It is a delicate and invidious task for one department of the Government to review the decision of another, on a point, involving the powers of either; and that delicacy is not a little increased in the present instance by the fact, that the Legislature have long been in the habit of passing acts of a similar character to the present.

The constitution of this State, Ch. 2, sec. 9, after defining the powers of the General Assembly, proceeds as follows : " But they shall have no power to add to, alter, abolish, or infringe, any part of this constitution." In Chap. 1, art. 4, it is further declared, that " Every person within this State ought to find a *certain* remedy, *by having recourse to the laws,* for all injuries or wrongs which he may receive in his person, property, or character: He ought to obtain right and justice freely, &c.—completely, and without any denial—promptly, and without delay, *conformably to the laws.*"

This constitution is the fundamental law of the State. The Legislature have not power to vary its provisions ; yet, there is none so humble, but that he may demand his remedy, and is entitled to it, without delay, according to the laws, of which this is the chief. For this remedy, the injured citizen is referred to the Courts of Justice. The interpretation of the laws is the proper and peculiar province of the Courts. It must therefore belong to them to ascertain the meaning of the constitution, as well as the meaning of any particular act proceeding from the Legislative body.

It is our *duty*, therefore, as well as our prerogative, to declare that alone to be the law, which is reconcilable with this *fundadamental law*—this *fiat* of the sovereign people.

If, therefore, the act in question, shall be found upon examination, to be of that description, we shall feel constrained to say, that in its passage, the constitution was misapprehended.

Nor will this conclusion, to use the language of one of our most eminent jurists and statesmen, by any means suppose a superiority of the Judicial to the Legislative power. It will only be supposing that the power of the people is superior to both ; and that where the will of the Legislature, declared in its statutes, stands in oppo-

Bennington,
February,
1824.

Bates
vs.
Kimball.

sition to that of the people declared in the constitution, the Judges ought to be governed by the latter rather than the former. They ought to regulate their decisions by the fundamental laws, rather than by those which are not fundamental. Fed. No. 78. Neither would we, in doing this, be understood as impugning the honest intentions, or sacred regard to justice, which we most cheerfully accord to the Legislature. But to be above error, is to possess an entire attribute of the Deity ; and to spurn its correction, is to reduce to the same degraded level, the most noble and the meanest of His works. Conscious, therefore, of the necessity of our course, and of the rectitude of our own humble intentions, we cannot but entertain the cheering hope that the result of that necessity will be regarded with candor and complacency, by that honorable body, against whose powers, as exercised on the point in question, it would seem to militate.

To determine whether the act pleaded in bar of the plaintiff's action in the present case, be constitutional or not, it becomes necessary to ascertain the character of the subject matter to be affected by it, as well as the consequences or effect of the act itself.

When the estate of a deceased person is represented insolvent, Commissioners are to be appointed to receive, examine, and adjust all claims of the creditors to such estate. (1 St. 152.) They are the only board known to our laws, having original cognizance of demands thus situated. Their determination, when approved by the Probate Court, becomes a matter of record. The demand, thenceforth, is a debt of record. (Bray. 41. 1 D. Chip. R. 423, Arthurton Ex'r of Arthurton v. Flagg et al. Admr's of Parker, 2 D. Chip. R. 61.) And is final between the parties, except in cases where an appeal is taken. (1. St. 153–4.) A judgment not appealed from within the time allowed by law for taking the appeal, is thenceforth of the same effect, as though no appeal were by law allowed, and is a final judgment.

Such was the plaintiff's cause of action, upon which the present suit was brought.

By the act in question, the defendant was authorized to enter an appeal from the decision of the Commissioners, to the present session of this Court. And it is therby further commanded, that the proceedings, both before the Court of Probate, and this Court,

shall be in all respects the same as though the defendant had en-
tered his appeal within the time allowed by law.

This act, in the first instance, alters the decision of the Com-
missioners from a final and absolute judgment upon the merits,
to a judgment *nisi*, or in other words, to a judgment *liable* to be
vacated by the act of the party in entering his appeal: And, sec-
ondly, through the authorized act of the party on entering his
appeal, it alters it *to* a judgment vacated. That a judgment ap-
pealed from *is* a judgment vacated, is evident from the fact that
by the appeal, the parties are thrown back upon the original cause
of action, and are compelled to litigate anew, that which would
otherwise be concluded by the judgment itself. Again, it can
never be enforced as a judgment of the same Court whence the
the appeal was taken, though the appeal be not carried up. If
the appellee do not, on the neglect of the appellant to prosecute
his appeal, procure an affirmance by the Court *to* which the appeal
was taken, he has lost the benefit of his judgment forever, and
must resort to a new suit for his remedy.

We find, then, that the subject matter of this act, was a final
judgment of record between party and party, rendered by a board
and approved by a Court of competent jurisdiction for that pur-
pose; and that the effect and operation of the act is, virtually
to vacate that judgment.

The real question, therefore, is, Have the Legislature power
to vacate or annul an existing judgment between party and party?

In solving this question, let us in the first place particularly
recur to that palladium of our liberties, by which we are consti-
tuted what we are, and without which neither the Legislature nor
the Judiciary would have power to command the reverence of
the most humble. The doctrine that all powers are originally in
the government, and that the people by their charters and their
constitutions have abridged and limited those powers, is fit only
for those countries where the ignorance of the people is the weap-
on by which lawless power maintains her throne.

The axiom, that the sovereignty is in the people, is a political
truth, on which every free and rational government is founded.
Its development has regenerated the nations of this western hem-
isphere, and again reillumines the long benighted but classic land

Bennington,
February,
1824.

Bates
vs.
Kimball.

of Greece. When the people associate, and enter into compact for the purpose of establishing government, *that compact*, whatever may be its provisions, or in whatever language it may be written, is the constitution of the State, revocable only by the people, or in the manner they prescribe. It is by this instrument that government is instituted—its departments created, and the powers to be exercised by each, conferred. The powers thus conferred by the written constitutions of this country, must be found *expressed* in the constitution, or be derived by a *just* and *necessary* implication, from the expressions used. But a power which is expressly delegated to *one* department can never be derived to another, by implication, because no necessity for such implicacation can justly be pretended.

The necessity of a distinct and separate existence of the three great departments of government, was well understood by the people of this State at the time of the adoption of our constitution. Its importance to the security of public liberty and private rights had been proclaimed and enforced by some of the wisest and most eminent men of other countries, and of this, among whom are Montesquieu, Sir William Blackstone, Jefferson and Madison. It had been sanctioned by the people of the United States, by being adopted in terms more or less explicit, into all their written constitutions. Accordingly we find it ordained by our constitution, C. 2, sec. 2, That the supreme Legislative power shall be vested in a House of Representatives, &c.

In C. 2, Sec. 3, That the supreme executive power shall be vested in a Governor, or, in his absence, a Lieutenant Governor and Council.

In C. 2, Sec. 4, That Courts of justice shall be maintained in every County in this State, &c. which Courts shall be open for the trial of all causes proper for their cognizance, &c.

These departments being thus constituted, the constitution, C. 2, Sec. 6, proceeds to declare " That the Legislative, Executive, and Judiciary departments shall be separate and distinct, so that neither exercise the powers properly belonging to the other."

Whatever, therefore, it properly belongs to the Judiciary to do, the Legislature are expressly precluded from doing.

That the Legislature have the power, *by general laws*, to es-

Bennington,
February,
1824.

Bates
vs.
Kimball.

tablish the Courts—to appoint and limit their respective jurisdictions—to prescribe the mode in which causes shall be brought before them—to enlarge or restrict the power of granting appeals, reviews, and new trials, and otherwise to regulate their proceedings, so that *every person* find a certain remedy by having recourse to them, for all injuries and wrongs, is readily admitted. But when they have done this, they have exercised every power relating to the administration of justice, " necessary for the *Legislature* of a free and independent State." And this is the extent of the powers of this description, vested in that body by the constitution ; except, indeed, certain judicial powers expressly delegated to them touching the conduct and privileges of their own members.

It is true that the constitution has no where particularly defined what those powers are, which properly belong to the Judiciary department. But from the 4th and 6th sections above recited, we learn, that, by the Judiciary department, is meant Courts of justice, which, (it is declared) shall be open for the trial of all causes proper for their cognizance. These powers, then, must be such as are usually exercised by Courts in the trial of causes and the administration of justice ; and to ascertain them, we must necessarily resort to the common law and usage, in manifest reference to which, the constitution was framed.

The effect of this act, it has been shown, is, to vacate a judgment, and to direct another trial in the matters determined by that judgment. And it is immaterial whether that effect be produced by authorizing an extraordinary appeal in a case not within, and of course, not " conformably to the laws," or whether it be done by ordering a *new trial* before the same Court. The mischief is the same. It is not by the *mode* of doing a thing, nor by the pretended *capacity* in which it is done, but by the *nature* of the act itself, that its propriety or impropriety is to be determined. To what department, then, do the common law and usages refer us, in view of these proceedings ? Most certainly to the Judiciary. The granting of a new trial after verdict and before judgment, (the effect of which is the same upon the former proceedings as that of an appeal) is a part of the ordinary administration of justice in all common law Courts, and is *essential* to the support and proper exercise of the right of trial by Jury.

11

*Bennington,*
February,
1824.

Bates
*vs.*
Kimball.

Again, the powers of granting appeals, reviews, and new trials, both before and after judgment, have been accorded to the Judiciary department, by the Legislature, from its earliest organization ; as is abundantly shown by their numerous statutes providing for and regulating the due exercise of those powers by the several Courts.

These several powers are named together, because, if one is properly a judicial power, the others must be also, inasmuch as they all have the same effect—that of annulling the final character of the anterior proceedings in the cause in which they are exercised.

But why this solicitude to regulate in the best manner the exercise of those powers in the hand of the Judiciary? Is it not because the Legislature have uniformly considered them as powers properly belonging to that department ?

But there are other reasons why they are, and must continue to be Judicial powers, independently of this practical expression of the opinion of the Legislature. And

1st.—Some of these powers are *essential,* and others incidentally necessary to the administration of justice.

2dly.—Most of them *have been exercised* from a period long antecedent to our constitution, by all Courts recognizing the common law. And

3dly.—They have been expressly adjudged to be *Judicial,* and not Legislative powers. 3 Dall. 398. 1 N. H. Rep. 204 Jour. Coun. of Cen. of Con. of 1820—21, p. 60.

The position then, that the power in question may be exercised by the Legislature, can be maintained on no other ground, than that *our* constitution, unlike the other free constitutions of this country, has expressly conferred it upon that department. This, is has before been shown, has not been done. But, if it had, then all our general statutes regulating the exercise of these powers by the Judiciary, would be unconstitutional. For, the constitution has expressly forbidden the exercise, by one department, of powers properly belonging to others ; and what the constitution has forbidden, no statute of the Legislature can authorize. But, for a doctrine so absurd, it is presumed, no one will contend. And is it not equally true, that, if the exercise of the powers, regulated in the

above mentioned statutes, *by the Judiciary*, is in accordance with the constitution, the exercise of them, or any of them, by the Legislature itself, is not so? No power can be properly a Legislative, and properly a Judicial power, at the same time; and as to mixed powers, the separation of the departments, in the manner prescribed by the constitution, precludes the possibility of their existence.

Nor is the exercise of the power in question less a Judicial act, because, by the existing laws, the Court could not afford the relief prayed for by the party.   Supposing that, in regulating the Judiciary department, the Legislature had so fixed the jurisdictions of the several Courts, that a certain class of causes was not cognizable before any of them.   Would the powers essential to the trial of those causes, cease to be properly Judicial powers? And would they, for that reason, become properly Legislative powers? Can the Legislature, by thus neglecting its duty in one respect, acquire an extraordinary jurisdiction to the exclusion of a co-ordinate department, in the teeth of the constitution by which they were created?   The word "*properly,*" used in that instrument, in designating the powers of the several departments, has reference to *that propriety* which had been declared by usage, and which is founded in the nature and fitness of things.   To give it any other meaning, would be to place the Legislature in a situation to become the capricious arbiter of its own jurisdiction in all cases whatever.

If a failure in the administration of justice occurs in consequence of the narrowness or paucity of the laws, the wisdom of the Legislature will prevent a recurrence of the evil; but they are not themselves to administer justice without law, because, forsooth, they have not made suitable provision for its administration by that department, to whom its administration is exclusively confided.   For, the people in their constitution, have limited themselves to that measure of justice, which can be meted *conformably to the laws.*   Beyond this, no remedy for the infraction of a relative right is recognized, in this, or any other free government.   The next step is within the confines of tyranny in the government, and its inseparable concomitants, uncertainty and insecurity to the people : No matter by what *names* they may be called, whether democratic or despotic—citizens or subjects. Their relations and conditions will be the same.

Bennington,
February,
1824.

Bates
vs.
Kimball.

Let us now examine this act, for a moment, independently of these express provisions of the constitution. Is it a law? The essential characteristics of a law, do not consist in form. That which distinguishes a Judicial from a Legislative act, is, that the *one* is a determination of what the existing law is, in relation to a particular thing already done or happened; while the *other* is a predetermination of what the law shall be for the regulation and government of all future cases falling within its provisions. It would seem that this definition alone ought to be deemed conclusive, as to which class of powers the act in question must belong. It does not prescribe a new rule for future cases; but, on the contrary, it virtually repeals the existing law, as to this particular case, and attempts to impose on the Courts a new and arbitrary rule, for their government, in the trial of it. It is not a law, therefore; but a sentence or decree, proclaiming to the world, that the rights of *these* parties shall not remain determined, as they have been, " conformably to the laws;" but that the vested right of the *one*, under that determination, shall be divested, to the end that the *other* may avail himself of a *special privilege* beyond what appertains to the rights of other citizens. This, the Legislature have not power to do. (Fed. No. 81. 6 Cranch 136. 11 Mass. R. 402.) " The very essence of a new law, (says Kent J. in Dash *v.* Van Cleeck, 7 John. R. 502) is a rule for future cases"—meaning, undoubtedly, that it is essential to a new law, that it constitute of itself, a rule for future cases. Law is defined by the British Commentator, to be, " a rule of civil conduct, *prescribed,* &c. (1 Bl. Com. 44.) And again he says, " All laws should be made to commence *in futuro,* and be notified before their commencement; which is implied in the term *prescribed.* (Ib. 46.) The Court would not be understood to say, that *no* statute law can be valid, which relates to a transaction antecedent to its enactment, as, for instance, a statute of pardon—(See Const. C. 2, Sec. 11.) The principle, meant to be laid down, is, that an act not expressly permitted by the constitution, which impairs, or takes away, rights vested under prior existing laws, is unjust, unauthorized, and void. A principle inculcated by numerous elementary writers and jurists of different ages and nations.

It has already been shown, that the report of Commissioners, on which the present action is founded, has all the qualities of,

and must be treated as a final judgment.  As such, it perfected
a contract between the plaintiff and defendant, and rendered it
one of the highest and most solemn nature, because witnessed by
the highest kind of evidence, viz. by matter of record.  (2 Bl.
Com. 465.  7 John. Rep. 489.)  This act, therefore, must be
deemed void, as repugnant to Art. I. Sec. 10 of the Constitution
of the United States which declares, that "No State shall pass
any *expost facto* law, or law impairing the obligation of contracts."
(See 6 Cranch 187. 7 same 161.)

We have before incidenatlly suggested, that this judgment
vested a right in the present plaintiff.

He had presented his claim according to law, and had success-
fully pursued it to the end of the law.   A right, therefore, to have
and possess that which he had recovered, had accrued to, and
vested in him, under the law.   Nothing but execution, or what,
in such case, is substituted for execution, remained to be done.
The act in question is therefore retrospective, virtually vacating
the judgment, and divesting the right acquired under it; and is
for that reason, void.   It is a settled principle of the common law,
that a statute shall not have a retrospective operation, so as to
take away a vested right.  (6 Bac. Abr. 370.  2 Mod. Rep. 310.
4 Burr. 2460.)   "Upon principle, (says Story J.) every statute
which takes away or impairs vested rights, acquired under exist-
ing laws, or creates a new obligation, imposes a new duty, or at-
taches a new disability, in respect to transactions or considerations
already past, must be deemed retrospective."   (2 Gall. R. 139.
See also 10 Mass. 439.   7 John. R. 477.   2 Cranch 272.)

But independent of the special limitation contained in the con-
stitutions of this, and the United States, reasoning from the general
theory and nature of our government, we necessarily arrive at the
same conclusion.   The government being composed of depart-
ments independent of each other, and their powers *separated,* it
follows, that each has exclusive cognizance of the matters within
its respective jurisdiction, and that when acting within it, the au-
thority of each is, and must be, final and supreme.   Mr. Hamilton
asserts, in his Commentary on the Constitution of the United States,
" That it is not true, that the *Parliament of Great Britian,* or the
Legislatures of the particular States, can rectify the exceptionable

Bennington,
February,
1824.

Bates
vs.
Kimball.
decisions of their respective Courts." Again, he says, "the theory, neither of the British, nor the State Constitutions, authorizes the reversal of a Judicial sentence by a Legislative act." "A Legislature, without exceeding its province, cannot reverse a determination once made in a particular case; though it may prescribe a new rule for future cases." (Fed. No. 81.) The same doctrine is recognized by the Supreme Court of the United States. (2 Dall. 410.) And Judge Swift, in his Treatise on the Laws of Connecticut, (p. 76.) says that no Legislature has a right to interfere in any private controversies between man and man. "The human mind," he says, "cannot imagine a greater absurdity, than to establish Courts of law and equity, to determine all questions of right between man and man, and then to admit the Legislature to exercise a sovereign authority in relieving against their determinations."

We have seen, then, that the act set forth in the defendant's plea in bar, is an assumption of Judicial power—that its exercise by the Legislature is expressly prohibited by the constitution of the State—that it is repugnant to the constitution of the United States—that it is retrospective, defeating in its operation, a right acquired and perfected under the existing laws of the land—and that it is a departure from the spirit and genius of our government. For these reasons it is invalid, and

The defendant's plea in bar is insufficient.