## Robert Burton v. Town of Salisbury
## George McDonough v. Town of Salisbury
## David Sidoti v. Town of Salisbury

[790 A.2d 394]

Nos. 99-559, 99-560 & 99-561

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed December 21, 2001

178

*John F. Evers* and *Kevin E. Brown* of *Langrock Sperry & Wool, LLP*, Middlebury, for Plaintiffs-Appellants.

*Donald R. Powers* of *Powers, English, Carroll & Ritter, Ltd.*, Middlebury, for Defendant-Appellee.

**Johnson, J.** Taxpayers appeal a decision by the state appraiser ruling that he did not have authority to rule on the constitutionality of an amendment to 32 V.S.A. § 4404(c), and that taxpayers are not entitled to a refund of property taxes paid in the years 1992-1996. The amendment imposed a retroactive change in § 4404(c) that voided a previous order of this Court. We reverse because the legislature's enactment violates the separation of powers mandated by the Vermont Constitution.

This case arose from a town-wide reappraisal of the Town of Salisbury that took effect in the 1991 tax year. Taxpayers Robert Burton, George McDonough, David Sidoti and forty other property owners located on Lake Dunmore, in Salisbury, Vermont appealed the listed value of their property to the Board of Civil Authority (BCA) pursuant to 32 V.S.A. § 4404. When the BCA failed to comply with the procedures of § 4404(c), taxpayers took their appeal to the State Board of Appraisers (Board).[1] In 1994, the Board found that the BCA did not comply with the time requirements of § 4404(c), which outlines specific deadlines for various stages of the appeal. It also found that because taxpayers did not waive compliance with § 4404(c), they were entitled to the rollback penalty. 32 V.S.A. § 4404(c) provided:

> If the board does not substantially comply with the requirements of this subsection and if the appeal is not withdrawn . . . , the grand list of the appellant for the year for which appeal is being made shall remain at the amount set before the appealed change was made by the listers; except, *if there has been a complete reappraisal, the grand list of the appellant shall be set at a value which will produce a tax liability equal to the tax liability for the preceding year.*

*Id.* (emphasis added). Because taxpayers had not waived compliance with § 4404(c), the Board applied the rollback penalty applicable under the exception for complete reappraisals to the 1991 tax year and did not proceed with a determination of the merits of taxpayers' appeal.

Taxpayers appealed the Board's 1994 decision to this Court. In that appeal, taxpayers claimed that they had a right to elect between the rollback penalty in § 4404(c) and an appeal on the merits of the BCA's valuation to the Board. Principally, taxpayers argued that an appeal on the merits might afford them a three year remedy under 32 V.S.A. § 4468. That section provides that a determination by the Board of the value of the property "shall become the basis for the grand list of the taxpayer for the year in which the appeal is taken and, if the appraisal relates to real property, for the two next ensuing years." *Id.*

---

[1] Prior to 1996, appeals from the BCA were decided by a three person board. In 1996, the legislature replaced the board with a single state appraiser. See 32 V.S.A. § 4465.

The appeal of the 1991 appraisals was heard by a panel of three justices in January 1996, and a final decision was issued by the panel in March 1996.[2] The panel concluded that it need not reach taxpayers' contention about the election of remedies. Rather, the Court distinguished between two types of penalties within § 4404(c). The first, not applicable in this case, provides for a one-year rollback in most appraisal appeals. See 32 V.S.A. § 4404(c). The second, applicable here, provides for a rollback when there has been a complete reappraisal but does not limit its duration to one year. See *id.* The Court interpreted this latter provision of § 4404(c) to mean that there is no time limit for the rollback penalty. The panel held that "[i]n this case there was a complete, or town-wide, reappraisal; consequently, the exception in § 4404(c) applies, and there is no time limit to the rollback penalty. Accordingly, the Town must act to alter the 1990 tax liability imposed under § 4404(c)."

Shortly after the March 1996 decision was issued, a bill was introduced in the Vermont House of Representatives entitled "An Act Relating to Miscellaneous Tax Changes." Amid the voluminous and random changes to various parts of the tax code, § 12 sought to amend 32 V.S.A. § 4404(c). The amendment added the language "for the year for which appeal is being made" to the description of the rollback penalty applicable when there has been a complete reappraisal. 1995, No. 169 (Adj. Sess.), § 12. In other words, the amendment reversed this Court's interpretation of § 4404(c) in the 1996 decision. The other relevant part of the House bill was § 27, which specified that § 12 would apply retroactively to January 1, 1991. *Id.* § 27. Thus, as amended, § 4404(c) would have limited taxpayers' 1991 appeal remedies to a single year. The bill passed the General Assembly and was signed into law in May 1996.

While the 1991 appeal was working through the hearing process, taxpayers filed another appeal, this time contesting their 1994 valuations, and raising the same issues as in the 1991 appeal. Again, the BCA failed to comply with the procedural requirements of § 4404(c). As a result of the identity of the issues, the Town and taxpayers agreed to a stipulation that incorporated the BCA's record, including its findings and conclusions from the 1991 appeal. The taxpayers then brought this appeal to the next tier of review, which had become the state appraiser. In September 1997, most of the other property owners who had appealed with taxpayers settled

---

[2] The full history of that decision is complicated, and irrelevant to this appeal.

the 1994 appeal with the Town. The Town and taxpayers, however, were unable to reach an agreement. On appeal to the state appraiser, the parties agreed that the issues in dispute could be settled on summary judgment. The main issue before the appraiser was the effect of Public Act No. 169 on taxpayers' claim for repayment of taxes from 1992 to 1996.

In November 1999, the state appraiser issued a decision in taxpayers' 1994 appeal. In that decision, the appraiser held that he did not have authority to rule on the validity of Public Act No. 169, and thus he must assume that the rollback penalty could apply for only one year. The appraiser further ruled that because taxpayers did not appeal their assessments in 1992 and 1993, he did not have jurisdiction over those years. Finally, the appraiser declined to reach the merits of taxpayers' 1994 appeal because the record on summary judgment was insufficient to rule.

It is the decision of the state appraiser in 1999 that is now before us. Taxpayers argue that the retroactive clause of the legislature's amendment to § 4404(c) violates the separation of powers required by Chapter II, Section 5 of the Vermont Constitution, as well as other state and federal constitutional principles. Because, according to taxpayers, limiting the rollback penalty to 1991 is unconstitutional, their tax liability is governed by our 1996 three justice panel decision. They contend that this Court's 1996 decision entitles them to repayment of taxes paid in excess of the rollback amount of 1991 for the years 1992 to 1996, and they were not required to file separate appeals for the years 1992, 1993, 1995 and 1996.

The Town counters that the retroactive element of the amended statute is constitutional because it is justified by a rational legislative purpose. The limitation on the rollback penalty is necessary to prevent windfalls to taxpayers when the Town conducts a complete reappraisal. Thus, the Town argues, the rollback penalty should apply only to the year in which the appeal was filed, i.e., 1991. Additionally, the Town urges this Court to overrule our decision in 1996 as inconsistent with earlier precedent. Finally, according to the Town, because taxpayers did not file subsequent appeals each year after 1991, their tax liability should remain at the assessed values.

There are two provisions of the 1996 act that affect the tax statute at issue in this case. The first is § 12 that changes the relevant language of § 4404(c) to clarify that the rollback penalty, even in the event of a complete reappraisal, shall apply only for one year — the

year in which the appeal was filed. This legislative pronouncement expressly contradicts our interpretation of the same statute in our 1996 panel decision. Such an action, however, is entirely within the bounds of the power of the legislature. See Vt. Const. ch. II, § 6 (legislative power over revenue bills); *Barnes v. Hall*, 55 Vt. 420, 421 (1883) (taxation and collection are purely statutory powers). Our paramount goal in statutory construction is to give effect to the legislature's intent. *Burlington Elec. Dep't v. Vt. Dep't of Taxes*, 154 Vt. 332, 335, 576 A.2d 450, 452 (1990). If the legislature disagrees with our reading of its intent, it is free to amend the statute to clarify the issue. Compare *State v. Madison*, 163 Vt. 360, 658 A.2d 536 (1995), with 13 V.S.A. § 7555a(5).[3]

The second provision of the 1996 act is more problematic. Section 27 of Public Law 169 (Adj. Sess. 1995) declared that the change to § 4404(c) shall be applied retroactively to January 1, 1991. According to the amended act, once the Town violated the procedures of § 4404(c) in the 1991 appeal, taxpayers would be entitled to a rollback penalty for one year only. This provision, therefore, specifically *undoes* the effect of this Court's interpretation of § 4404(c) as decided in our 1996 order. In making § 12 of the act retroactive, the legislature implicitly reversed a final judgment from this Court. Such legislation violates the constitutional principle of separation of powers. See Vt. Const. ch. II, § 5 ("The Legislative, Executive, and Judiciary departments, shall be separate and distinct, so that neither exercise the powers properly belonging to the others.").

This principle is well-rooted in our case law. In *Bates v. Kimball*, 2 D. Chip. 77 (1824), we held unconstitutional a statute entitled "An Act for the Relief of Isaac Kimball." In that statute, the legislature authorized Kimball to enter an appeal of a judgment entered against him after the statutory time limit had passed. The effect of the act was to "vacate or annul an existing judgment between party and party," *id.* at 83, because it ostensibly authorized an appeal from a final judgment below where no appeal was proper. The Court held that the act treaded on the province of the judiciary because the act, and not the courts, determined whether or not to allow an appeal. *Id.* at 85-86. The legislature does not have the power to grant appeals because "the constitution has expressly forbidden the exercise, by one department, of powers properly belonging to others." *Id.* at 86.

---

[3] As 1 V.S.A. § 213 makes clear, however, the legislature may not enact statutes that "affect a suit begun or pending at the time of their passage."

More recently, the United States Supreme Court addressed a situation similar to the one at bar when addressing the constitutionality of § 27A(b) of the 1934 Securities and Exchange Act. *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 (1995). Section 27A(b) was passed in reaction to the Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991), which imposed a limitations period on actions commenced to address violations of § 10(b) of the 1934 Act. Congress enacted § 27A(b) to permit reinstatement of those cases that had been dismissed as untimely under *Lampf,* but that had been commenced before *Lampf* was decided. The effect of § 27A(b) was to overrule the limitations period imposed by *Lampf* for those cases that had already been dismissed on those grounds. The Court held that "[b]y retroactively commanding the federal courts to reopen final judgments, Congress has violated" the separation of powers. *Plaut,* 514 U.S. at 219. The violation, in principle, was similar to the one in *Kimball.* Congress had directly interfered with final judgments of the judiciary by purporting to allow judicial proceedings where the judiciary had ruled that none was proper.

The central flaw in the statutes at issue in both *Plaut* and *Kimball* is that the enacting legislatures, either intentionally or not, undid final judgments of the jurisdiction's highest court. In *Plaut,* the United States Supreme Court emphasized the damage caused to the integrity of an independent judiciary. "When retroactive legislation requires its own application in a case already finally adjudicated, it does no more and no less than 'reverse a determination once made, in a particular case.' . . . Our decisions . . . have uniformly provided fair warning that such an act exceeds the powers of Congress." *Plaut,* 514 U.S. at 225 (quoting The Federalist No. 81, at 545 (J. Cooke ed. 1961)). In *Kimball,* this Court stressed the harm done to the vested rights of the litigants in these situations. A statute is void when it is "retrospective, virtually vacating the judgment, and divesting the right acquired under it . . . . It is a settled principle of the common law, that a statute shall not have a retrospective operation, so as to take away a vested right." *Kimball,* 2 D. Chip. at 89. In both cases, the holding was clear: the legislative branch may not overturn final decisions of the judiciary with statutory enactments, whether they are specific to an individual case (*Kimball*) or of general effect (*Plaut*).

■ Section 27 of the 1996 act in this case does the very same violence to this underlying principle. Our panel decision of 1996 expressly held that there was no time limit for the application of the rollback penalty for taxpayers' 1991 appeal. Thus, at the time of that decision, taxpayers had a vested right to a rollback penalty for excess taxes paid in 1991, and they were entitled to continue that rollback until the Town remedied their assessments. The legislature's attempt in § 27 to apply the one year limit to the rollback penalty to taxpayers' 1991 appeal undoes a final determination of this Court and divests taxpayers of a vested right. Whether the 1996 panel decision was wrongly decided is immaterial. "The issue here is not the validity or even the source of the legal rule that produced the . . . judgments, but rather the immunity from legislative abrogation of those judgments themselves." *Plaut*, 514 U.S. at 230. The 1996 decision conclusively determined the rights of the parties for the 1991 appeal. The legislature, if it disagreed with our interpretation of § 4404(c), was entitled to clarify the statute in question, which it did. The legislature may not, however, reach backwards with that statute and undo the Court decision that announced the disfavored statutory interpretation. We hold, therefore, that § 27 of Public Law No. 169 violates the separation of powers required by Chapter II, Section 5 of the Vermont Constitution.

Having determined that the retroactive provision of § 27 is unconstitutional, we turn to the question of which years the taxpayers are entitled to a refund. The 1996 decision held that the applicable rollback penalty had no time limit and concluded that "the Town must act to alter the 1990 tax liability imposed under § 4404(c)," which the Town did not do until 1996. The taxpayers, therefore, argue that they are entitled to this rollback for the years 1992 to 1996. The state appraiser, however, held that the taxpayers were not entitled to a refund for the years 1992, 1993, 1995, and 1996 because they had not appealed their taxes for those years.[4]

---

[4] The dissent claims that taxpayers are barred from relief for 1992, 1993, 1995, and 1996 because they failed to comply with the objection requirement of 32 V.S.A. § 5292. The dissent, however, misreads our precedent on the objection requirement of § 5292. In *Hojaboom v. Town of Swanton*, 141 Vt. 43, 442 A.2d 1301 (1982), we held that § 5292 applies only when a taxpayer questions the validity of a tax, not, as in this case, the assessment of property. *Hojaboom*, 141 Vt. at 49, 442 A.2d at 1304. There the taxpayers challenged their property assessment and were granted rollback relief pursuant to § 4404(c). We rejected the Town's contention that the taxpayers were required to comply with § 5292. "The plaintiffs . . . attacked the Board's findings as insufficient under 32

Indeed, to limit taxpayers' relief to those years in which they filed an appeal would be consistent with the statutory scheme for grand list appeals. Two methods for relief are envisioned by the statute. When a taxpayer initiates an appeal, the BCA must address that appeal within certain time limits. Those procedures are laid out in § 4404(c). If the BCA does not comply with those procedures, then § 4404(c) also sets forth the rollback penalty mechanism to ensure that the taxpayer pays tax based on the previous year's valuation. At this point, because the taxpayer has received relief, the tax appeal is dead. The taxpayer may then refile the appeal in each subsequent year. Multi-year relief is appropriate only under 32 V.S.A. § 4468. That section states that an appraisal fixed by the state appraiser shall become the basis for tax for the year of the appeal and the next two years. *Id.* The multi-year relief envisioned in § 4468 applies only once the tax appeal has made it all the way through the appeal process and a decision has been reached on the merits. If, on the merits, the state appraiser fixes an appraisal, only then is the taxpayer entitled to the three-year remedy of § 4468.

Taxpayers' decision not to appeal in 1992, 1993, 1995 and 1996 seems to have been based on their reliance on the position they took in the original appeal of the Board's decision. Taxpayers argued then that they should be able to choose between the rollback penalty, ending the appeal, and a decision on the merits, yielding three year relief. Appealing as they did in 1991 and 1994 indicates that taxpayers believed that ultimately they could choose the multi-year remedy of § 4468 over the limited rollback penalty. As the statutes indicate, the remedy is not a choice for the taxpayers, but rather is determined by the procedural posture of the appeal.

---

V.S.A. § 4404(c). Neither the validity of the tax nor the validity of the actions of the listers or selectmen in assessing such tax were contested . . . . Therefore the plaintiffs were not required to comply with the filing procedure of § 5292(a)." 141 Vt. at 49-50, 442 A.2d at 1304. In arguing that taxpayers in this case ought to have complied with § 5292, the dissent fails to distinguish between rights and remedies and the actions needed to preserve those rights and remedies. That taxpayers appealed assessments that did not reflect the rollback penalty does not change the fact that the case originated as an assessment case, not a validity case. The remedy specified by § 4404(c), namely that the tax amount would be based on previous liability rather than previous assessment, does not alter the fundamental nature of the challenge. Compliance with § 5292 stems from the nature of the right asserted, not the ultimate remedy given. The mechanism for applying the rollback penalty when there is town-wide reappraisal focuses on previous liability for practical purposes — that method is the only one that will ensure that taxpayers pay no more than the previous year.

■ Nevertheless, the 1996 panel decision controls this case, and as such the rollback penalty applicable to the 1991 appeal has no one year limit.[5] To hold that taxpayers are not entitled to relief for those years in which they did not renew their appeal would render our 1996 decision meaningless. In other words, under the state appraiser's view that taxpayers were required to file an appeal each year, our 1996 holding that the rollback provision has no time limit would have virtually no effect. If taxpayers had to renew their appeal every year to get the benefit of the rollback penalty, then the actual effect on taxpayers is no different from the legislature's retroactive amendment, limiting the rollback to one year. Limiting taxpayers' relief in our ruling today would deprive taxpayers of the very vested rights granted to them by the 1996 decision that the legislature unconstitutionally took away. We cannot hold the legislature's action unconstitutional, but give it effect nonetheless. For 1992 and 1993, therefore, taxpayers are entitled to the same rollback penalty they received in 1991.

■ Taxpayers did renew their appeal in 1994 and so failure to refile, by itself, would not have barred taxpayers from receiving the rollback penalty for that year. In 1994, however, unlike 1991, the parties waived compliance with § 4404(c).[6] Taxpayers made the

---

[5] The dissent is incorrect that this issue has already been decided in *Spears v. Town of Enosburg*, 153 Vt. 259, 571 A.2d 604 (1989), because that case involved a different part of the statute (§ 4404(c)), and a different type of reappraisal. In *Spears*, the taxpayer was appealing from the reappraisal of his property, not a *town-wide* reappraisal as in this case. When the BCA failed to comply with 32 V.S.A. § 4404(c) in *Spears*, the statute states that "the grand list of the [taxpayer] *for the year for which appeal is being made* shall remain at the amount set before the appealed change was made by the listers." 153 Vt. at 261, 571 A.2d at 605; 32 V.S.A. § 4404(c) (emphasis added). The statute, however, continues: *"except, if there has been a complete reappraisal,* the grand list of the [taxpayer] shall be set at a value which will produce a tax liability equal to the tax liability for the proceeding year." 32 V.S.A. § 4404(c) (emphasis added). Thus, the interpretation in *Spears* limiting relief to one year is entirely consistent with the plain language of that part of the statute. The statute setting forth the remedy for a town-wide reappraisal, however, contains no such limiting language. *Spears*, therefore, cannot control this case.

[6] The dissent distorts our holding in *Villeneuve v. Town of Cambridge*, 148 Vt. 15, 527 A.2d 659 (1987). Contrary to the dissent's assertion, *Villeneuve* did not establish that one *cannot* waive compliance with § 4404(c) by "pursuing a statutory appeal through the BCA and state Board . . . in the same administrative proceeding." 173 Vt. at 194-95, 790 A.2d at 407-08. Rather, *Villeneuve* merely held that in that particular case, the plaintiff *did not* waive compliance with § 4404(c). 148 Vt. at 16, 527 A.2d at 660 ("There was no waiver of that remedy *in this matter*.") (emphasis added). In that case, the taxpayer was pursuing the rollback penalty through the hearing before the Board of Appraisers, but

deliberate choice not to avail themselves of the rollback penalty and instead sought to pursue the merits of the appeal. Taxpayers cannot pursue both the merits of the appeal and retain an entitlement to the rollback penalty. Such a posture would allow taxpayers to choose between the rollback penalty and a merits determination — precisely the goal they pursued in the 1991 tax appeal. Preserving this choice, taxpayers would face no consequences from waiving compliance with § 4404(c). If they win on the merits, then taxpayers would be taxed on a reduced value, and if they lose on the merits, then they would still get the benefit of the rollback penalty. The 1996 decision must be applied in concert with a statutory scheme that contemplates two separate remedial options such that when taxpayers initiated a new round of appeals and sought a determination of their appeal on the merits, they could not do so from the comfort of believing that they were already entitled to the rollback penalty.[7] Therefore, taxpayers are not entitled to any rollback penalty for 1994. What they are entitled to is a hearing on the merits of their appeal and a determination of their property value. The state appraiser did not reach the merits of the 1994 appeal because he found the record insufficient. Remand is appropriate so that the parties can have a full hearing on the merits of taxpayers' appeal.

Finally, as for the years 1995 and 1996, a merits hearing on the 1994 appeal will presumably lead to a determination of the value of the property. At that point, "[t]he appraisal so fixed by the director or court shall become the basis for the grand list of the taxpayer for the year in which the appeal is taken and, if the appraisal relates to real property, for the two next ensuing years." 32 V.S.A. § 4468. As

---

on appeal to this Court, the taxpayer requested a merits determination for the first time. In our opinion, we cited the taxpayer's testimony before the Board as evidence that he had been requesting the rollback penalty. *Id.* at 17, 527 A.2d at 660 (quoting the taxpayer as saying: "So for that reason there [failure to comply with § 4404(c)], according to the statutes, my land should go back at the fair market value of 1983."). Here, as the dissent acknowledges, taxpayers did waive compliance with § 4404(c). There is no assertion that taxpayers are attempting to waive their right to the rollback penalty for the first time before this Court, as in *Villeneuve.*

[7] We do not disagree with the dissent's interpretation of how the remedial scheme of § 4404(c) ought to operate. The dissent, however, refuses to acknowledge the import of our 1996 panel decision. Notwithstanding our present interpretation of the statute, we cannot ignore the mandate of the 1996 decision for these taxpayers. For better or for worse, that decision held that there was no limit to the rollback relief for taxpayers' 1991 appeal until the Town remedied their tax liability. The dissent's position would deny taxpayers the relief to which they were entitled by the decision.

discussed above, taxpayers are not entitled to the rollback penalty once they elected to go forward on the merits of the 1994 appeal. Thus, no rollback penalty stemming from the 1991 appeal is appropriate for either 1995 or 1996 because of the intervening waiver of the rollback penalty in 1994.

*Reversed and remanded for proceedings not inconsistent with this decision.*

**Dooley, J.,** dissenting. I concur in the Court's decision that the retroactive amendment to 32 V.S.A. § 4404(c) to deny these petitioners a remedy is unconstitutional. I believe, however, that taxpayers are not entitled to the relief they seek except for property taxes assessed in 1994, the only year for which they appealed under the statutory procedure. Accordingly, I disagree with the majority's mandate and respectfully dissent.[1]

As an overview, I believe the majority opinion fails to distinguish between the rights and remedies of taxpayers, on the one hand, and the actions they must take to assert and preserve those rights and remedies, on the other. I agree that taxpayers had the rights and remedies the majority finds, but I believe they had to assert those rights, and seek the appropriate remedies, for each year for which they were dissatisfied with the listers' actions. Indeed, as discussed below, that is the holding of *Spears v. Town of Enosburg*, 153 Vt. 259, 571 A.2d 604 (1989), a decision that should control this case.

I have another disagreement with the majority's preservation holdings. It holds that when taxpayers do preserve, by appealing in 1994, they lose their rollback remedy. Again, this holding is contrary to a controlling precedent, *Villeneuve v. Town of Cambridge*, 148 Vt. 15, 527 A.2d 659 (1987). When coupled with the preservation holding above, the majority opinion produces the perverse result that a taxpayer does not have to preserve an objection to obtain a rollback remedy, but if the taxpayer does preserve, the rollback remedy is lost.

---

[1] I also question whether we have jurisdiction over this appeal. The state appraiser did not resolve all issues before him, leaving the assessment for 1994, 1995 and 1996 to further hearings, and his order is, therefore, not a final judgment. Further, the state appraiser ruled that since taxpayers appealed only for the year 1994, he did not have jurisdiction over any other year. Since we are acting on an appeal from the state appraiser, our jurisdiction is similarly limited. Nevertheless, given how long this controversy has been in litigation, I would use our power under V.R.A.P. 2 to decide the appeal.

At the outset, I think it critical to emphasize that the 1996 decision of this Court dealt with property taxes for only the 1991 tax year because that was the only year before the State Board of Appraisers below. Although the decision discusses taxpayers' rights in future years, it does not purport to adjudicate them. There is no indication that the record reflected whether taxpayers had appealed in years after 1991. Thus, I can not concur that a decision that taxpayers are denied relief for a year for which they did not appeal renders our 1996 decision "meaningless," as the majority asserts.

While I do not want to repeat all the facts, certain aspects of them need to be highlighted. Following a reappraisal by the Town, taxpayers received notification of an increased appraisal of their property in 1991. They appealed to the listers, who in 1991 denied the appeal. They then appealed to the BCA, which also denied their appeal in 1991, but its decision was untimely. In October of 1991, they appealed to the State Board of Appraisers.

The appeal apparently languished in the Board. In 1992, taxpayers were assessed at the exact same value as in 1991. This time, however, they registered no objection to the appraisal at any level. I recognize that their inaction is understandable since they received no personal notice of the appraisal because it was unchanged. See 32 V.S.A. § 4111(e). Having failed to appeal, however, they then failed to file an objection when they received their tax bill, as required by 32 V.S.A. § 5292. The exact same situation arose in 1993, and taxpayers failed again to object to the identical appraisal in that year.

Apparently, the chair of the state Board indicated at a hearing in early 1994 that failure to appeal would be considered a waiver, and taxpayers again went through the appeal process with respect to the 1994 appraisal, again the identical appraisal to that in 1991. Despite the fact the case then moved to this Court, taxpayers failed to contest the appraisal in 1995; and did not do so again in 1996 even though the appraisal remained the same despite our March 1996 decision.

The statutes provide for a very detailed appeal procedure that allows the local taxing municipality two opportunities to correct any errors in its determination of fair market value and resolves the dispute either in a specialized administrative adjudication or in superior court with ultimate appeal to this Court. While we have not addressed this issue directly, I have no doubt that the Legislature intended that a taxpayer exhaust all local remedies before seeking review in the courts or the state Board. See *Jordan v. State*, 166 Vt.

509, 510, 702 A.2d 58, 59 (1997) (requirement of exhaustion of administrative remedies is presumed); *In re D.A. Assocs.*, 150 Vt. 18, 20, 547 A.2d 1325, 1326 (1988) (where administrative remedy is established by statute, it must be sought and exhausted prior to court review); see also *Spears*, 153 Vt. at 262, 571 A.2d at 606 (burden is on taxpayer to challenge an unfavorable tax assessment in each year; the statute requires that an appeal be taken pursuant to 32 V.S.A. § 4404(a)). The whole point of these local remedies is to enable the municipality to settle any dispute locally, if possible, and to ensure fairness in assessments throughout the municipality. Indeed, as the majority states, "to limit taxpayers' relief to those years in which they filed an appeal would be consistent with the statutory scheme for grand list appeals."

The statutes also provide for a very specific objection requirement if a taxpayer attacks the validity of an assessment. See 32 V.S.A. § 5292. Although the filing of an objection is unnecessary when the issue is one that can be appealed, see *Hojaboom v. Town of Swanton*, 141 Vt. 43, 49, 442 A.2d 1301, 1304 (1982), I believe it is necessary when the taxpayer claims that an assessment is invalid because it does not reflect an applicable rollback remedy. Moreover, under our 1996 decision interpreting 32 V.S.A. § 4404(c), the rollback is to the former tax liability, and not to the former assessed property value.[2] Thus, taxpayers are attacking the amount of their tax liability for 1992 and 1993, an attack that comes squarely within the objection requirement. The statute requires that an objection be filed within two months of November 15th in each year.[3] Taxpayers failed to file an objection in this case.

There is no indication in the statutory scheme that a taxpayer need only contest an appraisal issue in one year to preserve it forever. Property tax appraisals have a duration of only one year. The listers

---

[2] The applicable phrase in § 4404(c) — "shall be set at a value which will produce a tax liability equal to the tax liability for the preceding year" — can be implemented retroactively because we know the tax rate. It cannot be implemented prospectively in the normal course because the tax rate is not known when the assessed value is determined. Despite the way the language is written, it is actually a rollback to the 1990 tax liability, and not to a specific assessed value.

[3] Although we do not have to reach this question, the majority assumes without analysis that the three-year rollback remedy under 32 V.S.A. § 4468 is available even if the taxpayer does not appeal or preserve an objection for the later years. I disagree with this assumption and would hold that preservation is required even to obtain the second and third year of rollback relief.

must come up with a new appraisal every year. They may choose to appraise at the prior year's value, but that is an affirmative decision, not a legal requirement. If the appraisal is redone each year, it is consistent to require the taxpayer to challenge the assessment for each year that he or she is dissatisfied with it.

This is not a technical requirement. These taxpayers were dissatisfied with a reappraisal that occurred in 1991, but their grounds are not necessarily operative in future years as property values change, and often not proportionally throughout the municipality. It is entirely possible that assessed valuation of taxpayers' property could exceed fair market value in 1991, but not in 1992 and 1993. It is also possible that rollback relief could be less advantageous to the taxpayer than an assessment at current fair market value. Moreover, the municipality is entitled to notice of challenges that may reduce revenues because it must build a budget on its best estimate of what resources are available.

Three other points are significant. First, we have already decided this question in an earlier case. In *Spears v. Town of Enosburg*, the taxpayer had obtained a rollback remedy for one tax year because the BCA failed to comply with 32 V.S.A. § 4404(c) and sought the same remedy for future years, essentially the relief sought by taxpayers here but in a nonreappraisal case. We found the statute provided for only a one year rollback. In response to the argument that one-year rollback was an ineffective remedy, we responded that plaintiffs could not obtain a better remedy, but not because of the limited duration of the rollback; instead it was because of their own inaction in the following years:

> In fact, the reappraisal became operative because of plaintiffs' inaction. The burden is on the taxpayer to challenge an unfavorable assessment in each tax year. 32 V.S.A. § 4404(a) states that a taxpayer must appeal by May 20th of the tax year for which the appeal is being taken. Plaintiffs failed to do so, in any of the three years at issue. The Town had no reason to reappraise the property and notify the taxpayers during the pendency of the appeal, since the listing was valid presumptively until the court decided otherwise. See *Adams v. Town of West Haven*, 147 Vt. 618, 619, 523 A.2d 1244, 1245 (1987). Absent a timely challenge by

the taxpayers, the appraisal of $137,700 for the tax years 1984, 1985, and 1986 must stand.

153 Vt. at 262, 571 A.2d at 606.

The point of the above analysis in *Spears* was that even if the plaintiffs had prevailed in their multi-year rollback argument, they could obtain no relief because they failed to appeal in the out years. Here, plaintiffs won on their multi-year rollback argument, but must face the additional reason for denial of relief in *Spears*. Having failed to appeal, the additional reason applies to them as well.

The majority's response that *Spears* is a nonreappraisal case, as I acknowledge above, is entirely beside the point. We concluded in *Spears* that taxpayer was not entitled to a multi-year rollback because it was not a reappraisal case, exactly as the majority states, *but added* that even if taxpayer had qualified for a multi-year rollback, he had waived it by failing to appeal in the out years. The majority ignores the latter part of the holding as if it does not exist.

Second, requiring preservation in the out years is consistent with the nature of the remedy this Court found was required by § 4404(c) in the 1996 decision. We held that in the case of a town-wide reappraisal "there is no time limit to the rollback penalty." Unlike the rollback remedy applicable when a taxpayer obtains an assessed value from the state Board, see 32 V.S.A. § 4468, this rollback remedy relates to the tax actually paid on the property rather than its assessed valuation. I doubt the 1996 decision intended that taxpayers would pay the same amount of taxes forever, despite large changes in municipal and school district expenditures and in the fair market value of the property. Indeed, the majority apparently agrees, stating that the rollback would continue "until the Town remedied their assessments."[4] Taxpayers essentially concede this

---

[4] The majority describes the limit on the rollback remedy as coming from a sentence of the 1996 decision stating: "Accordingly, the Town must act to alter the 1990 tax liability imposed under § 4404(c)." It states that the act described in the sentence did not occur until 1996. I don't know what the sentence in the 1996 opinion means, but the Town did nothing special in 1996 that it did not do in 1992; in both years it taxed plaintiffs in an amount different from 1990. There is no ground to say that the rollback ended in 1996.

In two sentences the state appraiser attempted to describe the limit of the rollback. He said that the "rollback penalty establishes a taxpayer's liability until the town acts to alter the liability imposed under section 4404(c)." Later in his opinions, he added that the rollback penalty set the assessed value at that necessary to produce a tax liability equal to that of 1990 "until the town acted to change it." I find both equally cryptic. The Town set the assessed value in 1992 at a level different from that calculated to achieve the same

point by not seeking relief beyond 1996 even though the majority has described their on-going rollback remedy as a "vested right." Moreover, the point of the 1996 decision is that it would make no difference to the taxpayers whether they received rollback relief under 32 V.S.A. § 4468 or under § 4404(c), and § 4468 rollback relief does not apply if there is a town-wide reappraisal or if a taxpayer's property is altered, changed or damaged.

If the 1996 decision had remained the law, I suspect there would have been further litigation to define the nature of the rollback relief. It would make no sense to allow taxpayers, without objection, to pay a tax amount different from that imposed in 1990 and then seek a partial refund years later arguing over the reach of the rollback remedy. That is exactly what the majority has allowed here.

Third, although unstated, much of the majority's objection to requiring preservation is that we are dealing with a case where the rules were unpredictable when taxpayers chose to appeal, or not appeal, and the result of requiring preservation is that the Town will prevail, at least in part, albeit not for the reasons that they have argued they should prevail. Certainly, the legislative appeal scheme would work far better if we were not dealing with a State Board of Appraisers decision rendered over three years after the listers set the appraised values in dispute and an appeal to this Court heard and rendered sixteen months later. Nevertheless, and specifically after *Spears*, it is not unreasonable to expect the taxpayers, who were acting as a group and with counsel, to somehow register their objections to the Town's taxing actions in the years after 1991. They knew that they opposed these actions, and they could not rely on the 1991 appeal to fully conclude the dispute between them and the Town.

Finally, I disagree with the Court's rationale for denying relief for 1994, 1995 and 1996, pending a new decision by the Board. On November 30, 1994, the parties agreed in connection with the appeal of the 1994 assessment to allow the BCA to make a decision based upon the record made in the appeal of the 1991 tax decision, rather than going through a new hearing that would involve the same evidence. They signed a stipulation to that effect and waived compliance with § 4404 because they recognized that this procedure was not authorized by the section, and its use might give taxpayers a

---

tax liability as in 1990, and, thus, "acted to change it." Under the state appraiser's description of the limit of the rollback, I don't understand why it did not end in one year.

right to a rollback remedy. The BCA, acting on the stipulation, issued a decision against taxpayers based on the 1991 record. The stipulation is the waiver of defects in the BCA adjudication to which the Board and the majority refer. All of this was done before this Court's 1996 decision.

Both the Board and the majority find that the 1994 stipulation is some kind of waiver of rollback relief. I disagree. I think it is better characterized as a red herring.

First, it is a distortion to call the stipulation a waiver of rollback relief. The majority says taxpayers "made the deliberate choice not to avail themselves of the rollback penalty and instead sought to pursue the merits of the appeal" and concludes that if they "initiated a new round of appeals and sought a determination of their appeal on the merits, they could not do so from the comfort of believing they were already entitled to the rollback penalty." Taxpayers appealed in 1994, two years before they learned they had available an open ended rollback remedy, relief they never asked for; they could not have acted on the "comfort" they had a rollback remedy available. They never had a rollback penalty which they made "a deliberate choice not to avail themselves of." They stipulated to use of a noncomplying procedure in advance of the BCA hearing. They entered into the stipulation only to be sure that use of the noncomplying procedure did not trigger a § 4404(c) violation. Absent the stipulation, the BCA would have heard the 1994 appeal under the statutory requirements, and there would have been no entitlement to a rollback penalty.

Second, a tax-year 1994 waiver would be irrelevant to taxpayers' rights. Taxpayers are relying on the indefinite rollback remedy granted by this Court in our 1996 decision for the tax-year 1991 violations of § 4404(c). Even under the majority's analysis, taxpayers never waived those violations.

Related to that point, our law is clear that a waiver is "a voluntary relinquishment of a known right." *KPC Corp. v. Book Press, Inc.*, 161 Vt. 145, 148, 636 A.2d 325, 327 (1993). The majority holds that by agreeing to a noncomplying procedure in 1994 taxpayers waived their right to rollback relief created by this Court in 1996, relief they never requested. I am perplexed how taxpayers by actions in 1994 can be held to have waived a remedy known only two years later.

Finally, we held in *Villeneuve v. Town of Cambridge* that pursuing a statutory appeal through the BCA and state Board does not constitute a waiver of the right to pursue a rollback remedy for

violations of § 4404(c) *in the same administrative proceeding.* 148 Vt. at 16, 527 A.2d at 660. The majority is creating an inconsistent waiver theory here.

The majority's response to this point is unpersuasive. The issues in a state Board appeal are set forth in § 4467 and require the Board to set taxpayer's property in the grand list at a corresponding value to the listed value of comparable properties. Consistent with the role of the Board, the taxpayer in *Villeneuve* asked for a determination of fair market value both in the Board and in this Court, exactly as the taxpayers have done in this case. Essentially, the majority is faulting taxpayers for not saying in their state Board appeal that they also rely on their rollback remedy created because of the violation of their rights for tax-year 1991. They couldn't say that because they had no idea that they had such a remedy when they appeared before the Board.

I would hold that taxpayers waived their right to obtain the rollback relief in 1992, 1993, 1995 and 1996 by not preserving it. I would hold, however, that they are entitled to rollback relief for 1994 because they did preserve in that year. Accordingly, I dissent from the mandate.