2014 VT 9



Lathrop v. Town of Monkton,
Norris v. Town of Monkton (2013-026, 2013-032 & 2013-033)

 

2014 VT 9

 

[Filed 24-Jan-2014]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2014 VT 9
 
  


 Nos. 2013-026, 2013-032 & 2013-033
 
  


 James Lathrop 
  
      v.
  
 Town of Monkton
 
 
 Supreme Court
 
 
  
 On Appeal from
 
 
 Property
 Valuation and Review Division
 
 
  
 November Term, 2013
 
 
  
 
 
  
 
 
 Peter M. Norris, Sr.
  
      v.
  
 Town of Monkton
  
 
 
  
 
 
 Michael
 Bernhardt, State Appraiser
 
 
  
 
 
  
 
 
  
 
 
 
 
 James Lathrop, Pro Se, Bristol, Plaintiff-Appellee (13-026).

 

Adam L. Powers of Powers & Powers P.C., Middlebury, for
Plaintiff-Appellee Norris 

  (13-032 & 13-033).

 

Charles L. Merriman of Tarrant, Gillies, Merriman &
Richardson, Montpelier, for 

  Defendant-Appellant.

 

 

PRESENT:   Reiber, C.J., Skoglund,
Robinson and Crawford, JJ., and Toor,
Supr. J.,

                    
Specially Assigned

 

 

¶ 1.            
CRAWFORD, J.   The Town of Monkton brings this
consolidated appeal from decisions of the state appraiser in three property tax
cases challenging the Town’s 2011 assessment.  The state appraiser ruled that
the Town had treated taxpayers inequitably by adding additional “home-site
values” to undeveloped parcels that are subject to a permitted and recorded
subdivision plan.  The Town does not add this additional element of
appraised value to other undeveloped parcels that may be eligible for
subdivision without a permit due to their history or configuration. The Town
argues that it acted fairly in applying different valuation methods to
properties with different characteristics.  From the Town’s perspective,
the appraised value of a parcel of land with a permit for more than one home
should reflect this additional development value, and land that could be
subdivided but is not the subject of a permit is not similarly situated for
purposes of tax appraisal.   We agree and reverse.

¶ 2.            
At issue is the manner in which the Town assesses land that has the
potential for subdivision and further development.  At the time relevant
to this appeal, a property owner in Monkton could legally subdivide and convey
a portion of his or her property if that property was (1) naturally divided by
a road; (2) contained multiple contiguous lots created by deed prior to the
introduction of zoning in 1978; or (3) had a subdivision permit from the Town’s
Development Review Board (DRB).  Generally, the first two categories of
property could be divided and conveyed without a subdivision permit obtained
from the DRB.  

¶ 3.            
For property tax purposes, property in the first two categories was
assessed as having only one house site, with the remainder of the land valued
according to the Monkton land schedule.  However, if a property owner
obtained a DRB permit to subdivide his or her property into multiple
residential lots, and recorded a subdivision survey plat with the town clerk,
the Town assigned a house site value of $51,500 to each additional permitted
lot.  Each potential house site was deemed to be two acres.  The Town
assessed the remaining undeveloped acreage according to the land schedule. 

¶ 4.            
In the three appeals consolidated here, taxpayers applied for and
received approval from the Monkton DRB to subdivide their parcels into two or
more residential lots, and recorded the subdivision plans for the approved
developments in the town records.  The Town assessed these parcels as
containing multiple two-acre house sites and valued the remainder of the land
according to the town land schedule.  Each additional two-acre house site
added $51,500 to the parcel’s total assessed value, with some variation to
reflect the quality of each lot.[1] 

¶ 5.            
Taxpayers appealed their 2011 assessments to the Monkton Board of Civil
Authority, which denied the appeals.  Taxpayers then appealed to the state
appraiser. 

¶ 6.            
The state appraiser found that “[t]he Town assesses contiguous lots
within parcels created prior to 1978, not created through the town’s zoning and
[DRB] process with mylar on file, as only having one
house site.”  The appraiser further found that parcels
containing contiguous lots created after 1978 through the Town’s DRB process
were considered to have multiple house sites.[2]
 The appraiser found that the Town’s distinction between the two types of
parcels was “arbitrary” and that the Town was “not treating all properties in
Monkton fairly and equitably with other like properties.”  He therefore
removed the assessments for the additional house sites in each case.  The
Town appeals the appraiser’s decision, arguing that the appraiser erred in
determining that taxpayers were treated inequitably compared with other
similarly situated taxpayers in Monkton.

¶ 7.            
We review the state appraiser’s findings of fact for clear error.  Barnett v. Town of Wolcott, 2009 VT 32, ¶ 5, 185 Vt. 627,
970 A.2d 1281 (mem.).  Our review of the
appraiser’s legal conclusions is nondeferential and plenary.  Id. 


¶ 8.            
As a threshold matter, the Town asks us to reverse the appraiser’s
decision in taxpayer Norris’s case because the appraiser failed to sanction
Norris for his refusal to produce requested documents and records prior to the
hearing.  The administrative rule governing tax appeals states that
parties to a property tax appeal “shall have reasonable rights to discover all
documents and records that are relevant to the issues raised by the appeal,”
and the appraiser “may enforce this rule by appropriate sanctions, including
dismissal of the appeal.”  Prop. Valuation and Rev.
§ 12, 1 Code of Vt. Rules 10 061 003-5, available at
http://www.lexisnexis.com/hottopics/codeofvtrules.  Representing
himself, taxpayer declined to provide the Town with any documents prior to the
hearing on the grounds that those materials were all public records and were
not required to be submitted in advance.  This was an improper response to
the Town’s discovery request.  Whether the documents that a party intends
to use at the hearing are public records is irrelevant under the rule, which
clearly states that parties are obligated to disclose “all” relevant documents
and records.  Id.  It would have been appropriate for the
appraiser to enforce the Town’s right to discover the information upon which
taxpayer intended to rely at trial through sanctions imposed on the
noncompliant party.

¶ 9.            
However, we will not reverse the decision below on this basis.
 Discovery rulings are within the broad discretion of the appraiser, and
discretionary rulings will not be disturbed by this Court absent a showing that
discretion was abused or entirely withheld.  Record v. Kempe, 2007 VT 39, ¶ 9, 182 Vt. 17, 928 A.2d 1199.  The appraiser declined to dismiss the
appeal, finding that the discovery violation could be cured by giving the Town
time to submit appropriate responses and comments after the hearing.  The
Town provides no evidence to show that it was denied such an opportunity.

¶ 10.         We
therefore proceed to the merits.  The U.S. and Vermont Constitutions and
Vermont statutes governing taxation of real and personal property require that
taxes be uniformly assessed, so that no taxpayer pays more than his or her fair
share of the tax burden. Allen v. Town of W. Windsor, 2004 VT 51,
¶ 2, 177 Vt. 1, 852 A.2d 627.  To that end,
properties must be listed at fair market value.  Id.;
32 V.S.A. § 3481(1).  Fair market value is based on the
highest and best use of the property.  Zurn v. City of St.
Albans, 2009 VT 85, ¶ 8, 186 Vt. 575, 980 A.2d 795 (mem.).  The Town is not required to treat an
undivided parcel as one economic unit for appraisal purposes if the highest and
best use of the property is as subdivided lots.  Barnett,
2009 VT 32, ¶ 11.  The development potential of property is an
appropriate factor to consider in fixing appraised values.  Scott Constr., Inc. v. Newport Bd. of Civil Auth., 165 Vt.
232, 235, 683 A.2d 382, 383-84 (1996).  

¶ 11.         Taxpayers’
position, accepted by the state appraiser, is that the Town’s taxation scheme
violates the Proportional Contribution Clause of the Vermont Constitution and
the Equal Protection Clause of the Fourteenth Amendment to the U.S.
Constitution because similarly situated taxpayers—i.e., those who own parcels
divided by roads or containing contiguous lots created by deed prior to 1978,
and those whose land is subject to a subdivision permit—are treated
differently.[3] 

¶ 12.         The
state and federal guarantees of equal treatment do not require identical
treatment.  As we have noted in the past, “[t]he constitutional requirement
of proportional contributions for the support of the government was not
intended to restrict the state to methods of taxation that operate equally upon
all its inhabitants.”  Clark v. City of Burlington,
101 Vt. 391, 405, 143 A. 677, 682-83 (1928).  “And, as far as
classifications are concerned, our proportional contribution clause is the
practical equivalent of the equal protection clause of the Fourteenth Amendment
to the United States Constitution.”  In re Estate of
Eddy, 135 Vt. 468, 472, 380 A.2d 530, 534 (1977). 

¶ 13.         In
order to be constitutionally valid, a legislative classification of taxpayers
must “bear a reasonable relation to the purpose for which it is established”
and must “be fairly and equitably applied among like classes of taxpayers.”
 In re Prop. of
One Church St. City of Burlington, 152 Vt. 260, 266, 565 A.2d 1349, 1352
(1989).  With regard to the first requirement, if “any reasonable policy
or purpose” for the classification exists, it will be upheld.  Id.
(quoting Andrews v. Lathrop, 132 Vt. 256, 259, 315 A.2d 860, 862
(1974)); see also Allegheny Pittsburgh Coal Co. v. Cnty.
Comm’n of Webster Cnty.,
488 U.S. 336, 344 (1989) (“A State may divide different kinds of property into
classes and assign to each class a different tax burden so long as those
divisions and burdens are reasonable.”). 

¶ 14.         Here,
it was the practice of the Town to treat parcels with subdivision permits
differently from parcels that could be sold as subdivided lots but are not
subject to the DRB permit process.  The Town had a reasonable purpose for
doing so.  While all three types of parcels may legally be sold as
subdivided lots, a DRB permit operates as prima facie evidence that the highest
and best use for the permitted parcel is to subdivide it into multiple home
sites.  The Town may rationally conclude on the basis of the permit that a
permitted development is financially feasible and will result in the highest
value for the land through sales of multiple home sites. 

¶ 15.         Parcels
divided by a road or containing contiguous lots created by deed prior to 1978,
by contrast, differ in important respects from parcels subject to a DRB permit.
 The fact that the owners in the first category have the right to sell
their land as multiple lots without obtaining subdivision approval does not
necessarily demonstrate that the highest and best use of their property is as
multiple house sites.  Subdivision of these types of parcels into multiple
house sites has not been shown to be physically possible, financially feasible,
or likely to result in the highest value.  The lots may be unbuildable due
to wetland or ledge, or they may be too small or landlocked, preventing
residential use.  On the other hand, after a taxpayer has gone through the
effort of obtaining a permit and recording a subdivision plat, the Town may
reasonably conclude that the highest and best use of that land is as a
subdivision containing multiple house sites and assess it accordingly. 

¶
16.        
The practice of adding the additional home-site value to permitted lots
is only the starting point for the determination of appraised values.  In
determining the value associated with highest and best use, the Town may
increase the value of an undeveloped parcel to reflect development value even
in the absence of a DRB permit.  See Hurlburt v. Town of Monkton,
No. 2010-036, 2010 WL 7799809, at *3 (Vt. Oct. 21, 2010) (unpub.
mem.) (“[I]t is not unlawful to assess subdivided
lots of a larger parcel separately if the highest and best use of the property
is for potential development.”),
https://www.vermontjudiciary.org/LC/unpublishedeo.aspx.  Similarly, a
taxpayer who has obtained a DRB permit remains free to present evidence that
the property lacks development potential despite the issuance of the
permit.  

¶ 17.         We
conclude that the Town’s practice of assigning additional home-site values to
permitted subdivisions has a rational basis and is constitutionally valid.
There is a sufficient difference between lots with actual permits in place and
lots which are potentially subject to division without a permit to justify the
different treatment by the Town.  The state appraiser therefore erred in
reducing the assessed value of taxpayers’ land.         


           
Reversed and remanded for the amendment of the assessed values of taxpayers’
land consistent with this opinion.

 

 


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  















[1] 
Each house site is assigned a grade, and the standard house site value of
$51,500 is multiplied by that grade to reach the assessed value.  For
example, a two-acre house site with a grade of 1.0 has a value of
$51,500.  A grade of 1.20 will result in a value of $61,800, and a grade
of 0.75 will result in a value of $38,625. 

 





[2] 
The appraiser further found that “[c]ontiguous lots
created within a single parcel that were created post 1978 through the town’s
zoning and [DRB] process highest and best use as a subdivision is considered to
have multiple house sites.” 





[3] 
Chapter 1, Article 9 of the Vermont Constitution states: 

 

   
That every member of society hath a right to be protected in the enjoyment of
life, liberty, and property, and therefore is bound to contribute the member’s
proportion towards the expence of that protection,
and yield personal service, when necessary, or an equivalent thereto . . . and
previous to any law being made to raise a tax, the purpose for which it is to
be raised ought to appear evident to the Legislature to be of more service to
community than the money would be if not collected.